OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 At the heart of this factually complex commercial case are
 
 *429
 
 two legal issues: first, whether a claim has been stated for breach of fiduciary duty and waste, and second, whether Business Corporation Law § 612 was violated in connection with a merger effectuated by the corporate defendant. Concluding that there was neither, we affirm the Appellate Division order dismissing the complaint.
 

 Plaintiff Pinnacle Consultants, Ltd., a Delaware corporation, has since 1987 owned stock in defendant Leucadia National Corporation, a publicly owned financial services corporation organized in New York. The other defendants are Leucadia’s board of directors individually. Defendant Ian Gumming has served as Leucadia’s chairman since 1978, and defendant Joseph Steinberg as president since 1979. Allegations of wrongdoing center on four transactions: three involve the issuance of warrants; the fourth concerns the merger.
 

 In 1985, 1991 and 1992, the board of directors approved the issuance of warrants that gave Gumming and Steinberg, separately, options to purchase several hundred thousand shares of Leucadia stock.
 
 *
 
 The terms of those warrants were described in proxy statements to Leucadia’s shareholders, and the shareholders voted to approve each transaction. In 1989, Leucadia repurchased the majority of the 1985 warrants. In 1990, the Leucadia board of directors proposed a merger with Marks Investing Corporation (MIC). Leucadia owned 56% of MIC’s stock, and MIC owned a 54% interest in TLC Associates, a partnership. TLC, in turn, owned an approximately 58% interest in Leucadia. Gumming and Steinberg, in addition to their positions with Leucadia, were directors of both MIC and TLC. The proffered reason for the merger, as set forth in the proxy statement sent to Leucadia’s shareholders, was to simplify the circular ownership structure among Leucadia, MIC and TLC.
 

 The proxy statement also revealed that the merger would give Gumming, Steinberg and another director — defendant John W. Jordan II — a controlling interest in Leucadia. Prior to the merger, Gumming and Steinberg each owned 4.39% of MIC’s stock, and Jordan owned 15.2%. In addition, Gumming and Steinberg each owned 23% of TLC. Following the merger, TLC would be dissolved, and its assets — over 8.6 million shares of Leucadia stock — would be distributed to its owners in proportion to their interest. The result would leave Gumming and
 
 *430
 
 Steinberg each with slightly over 22.1% of Leucadia’s stock, and Jordan with 5.87%. Together, Gumming, Steinberg and Jordan would own just over 50% of Leucadia. The proxy statement also revealed that TLC intended to vote its Leucadia shares — 58.7% of the outstanding shares — in favor of the merger. Therefore, excluding the directed voting shares, the merger would be approved if 8% of the remaining outstanding shares voted in favor. On May, 11, 1990, Leucadia’s shareholders approved the merger. Pinnacle did not vote its shares for or against the merger, nor did it return the proxy.
 

 In 1994, Pinnacle — a corporation that buys and sells stock for the benefit of its sole shareholder, who is also its president — brought a derivative action in the United States District Court for the Southern District of New York against Leucadia and its officers and directors, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC § 1962 [b]-[d]), as well as various other claims. As predicate acts for its RICO claim, Pinnacle alleged wrongdoing in the issuance of the 1985, 1991 and 1992 warrants, and failure of the proxy statement to state that Business Corporation Law § 612 prohibited TLC from voting its shares in favor of the merger. The District Court dismissed the suit in part, holding that Pinnacle’s claims concerning the 1985 warrants were time-barred; that the proxy statements relating to the 1991 and 1992 warrants were not false or misleading; that the warrants were properly issued under Business Corporation Law § 505; and that Business Corporation Law § 612 did not prohibit TLC — a partnership — from voting its shares in favor of the merger. The court held, however, that Pinnacle did state claims for breach of fiduciary duty and corporate waste under New York law, but dismissed those claims for lack of Federal jurisdiction.
 

 The United States Court of Appeals for the Second Circuit affirmed, holding that the authorizations of the warrants were proper and did not constitute predicate fraudulent acts under RICO. Specifically, the court held that Leucadia complied with Business Corporation Law § 505; that it issued the warrants to Gumming and Steinberg because of the “dramatic turnaround that Leucadia experienced;” and that the corporation “could reasonably determine that the issuance of the warrants was deserved on the basis of past service”
 
 (Pinnacle Consultants v Leucadia Natl. Corp.,
 
 101 F3d 900, 905). In addition, the court held that there was “no fraud shown in the issuance of the warrants,” and that “the Directors’ business judgment is conclusive that valid consideration was received for the
 
 *431
 
 warrants”
 
 (id.).
 
 Further, because at least two predicate acts were necessary under RICO, the single alleged Business Corporation Law § 612 violation could not alone support a RICO claim, and the court held that it was unnecessary to reach the question whether section 612 had been violated
 
 (id.,
 
 at 906). Finally, the court held that there was no diversity of citizenship to support Federal jurisdiction for any State law claims
 
 (id.,
 
 at 906-907).
 

 Pinnacle then brought the instant derivative action in State court against Leucadia and its officers and directors, alleging that defendants had violated Business Corporation Law § 612 by permitting TLC to vote its shards in favor of the merger with MIC. Pinnacle also claimed that, by issuing the warrants, defendants violated Business Corporation Law § 505 and committed fraud, corporate waste, conversion and breach of fiduciary duty. Supreme Court dismissed, as barred by collateral estoppel, the claim that the warrants had been improperly issued. In addition, the court held that section 612 had not been violated because it applies only to corporations — not partnerships. The court, however, held that Pinnacle had stated a claim for breach of fiduciary duty and corporate waste.
 

 The Appellate Division modified Supreme Court’s judgment and dismissed the entire complaint, holding that Pinnacle lacked standing and was estopped from challenging any of the transactions because, as a shareholder, it had not voted against them. Further, the Appellate Division held that Business Corporation Law § 612 did not prohibit TLC from voting its shares in favor of the merger because that section does not apply to partnerships; that the proxy statement for the merger disclosed all relevant facts; and that defendants’ compliance with Business Corporation Law § 505 precluded Pinnacle’s claims that defendants had committed conversion and corporate waste in issuing the warrants. We granted leave and now affirm.
 

 Analysis
 

 On appeal to this Court, Pinnacle urges first, that, as officers and directors of Leucadia, the individually named defendants breached their fiduciary duty and committed corporate waste by issuing the warrants to Gumming and Steinberg, and second, that under Business Corporation Law § 612 TLC should have been precluded from voting its shares in favor of the merger.
 

 Pinnacle’s claims concerning the warrants are barred by collateral estoppel. Collateral estoppel, or issue preclusion,
 
 *432
 
 prevents a party from “ ‘relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party’ ”
 
 (Parker v Blauvelt Volunteer Fire Co.,
 
 93 NY2d 343, 349). The doctrine applies if the issue in the second action was “raised, necessarily decided and material in the first action,” and if the party “had a full and fair opportunity to litigate the issue in the earlier action”
 
 (id.; see also, Gramatan Home Investors Corp. v Lopez,
 
 46 NY2d 481, 485).
 

 Here, Pinnacle’s claims that defendants breached their fiduciary duty and committed corporate waste by issuing the warrants to Gumming and Steinberg were raised and necessarily decided in the Federal court action. As predicate acts for its RICO claim, Pinnacle alleged that Leucadia’s board of directors illegally authorized the warrants and that they were not supported by valid consideration
 
 (see,
 
 Business Corporation Law § 505 [a] [1]). The Second Circuit rejected Pinnacle’s argument, holding that the warrants had been validly issued in order to reward Gumming and Steinberg for Leucadia’s “dramatic turnaround;” that there was “no fraud shown in the issuance of the warrants;” and that “the Directors’ business judgment is conclusive that valid consideration was received for the warrants” (101 F3d, at 905). Thus, the court concluded that the warrants were properly issued and that their issuance was economically justified as compensation for Gumming and Stein-berg’s service to Leucadia.
 

 From this decision, it follows necessarily that issuance of the warrants was
 
 not
 
 corporate waste and
 
 not
 
 a breach of fiduciary duty. Indeed, the premise of Pinnacle’s corporate waste and breach of fiduciary duty claims is that, in authorizing the warrants, the directors improvidently exercised their business judgment. That, however, was the very issue decided by the Second Circuit against Pinnacle
 
 (see, Browning Ave. Realty Corp. v Rubin,
 
 207 AD2d 263, 266-267 [where Federal court dismissed RICO claim, subsequent State law claims raising same issue barred by collateral estoppel],
 
 Iv denied
 
 85 NY2d 804).
 

 Further, it is of no moment that, after dismissing Pinnacle’s RICO claim, the Second Circuit dismissed its State law waste and fiduciary duty claims for lack of Federal jurisdiction rather than on the merits. Indeed, in view of the RICO dismissal, the Federal court lacked subject matter jurisdiction to determine the merits of the pendant State law claims. Nevertheless, since, as noted, the Federal court’s dismissal of the RICO claim nec
 
 *433
 
 essarily determined the same issues raised by the corporate waste and breach of fiduciary duty claims, the State law claims are barred by collateral estoppel
 
 (see, id.
 
 [applying collateral estoppel even though, in dismissing RICO claim, Federal court never assumed jurisdiction over State law claims]).
 

 Moreover, Business Corporation Law § 505 (h) states that “[i]n the absence of fraud in the transaction, the judgment of the board shall be conclusive as to the adequacy of the consideration * * * for the issue of rights or options for the purchase from the corporation of its shares.” As the Appellate Division recognized, since the Second Circuit found “no fraud shown in the issuance of the warrants” (101 F3d, at 905), plaintiffs challenge cannot stand.
 

 We next turn to Pinnacle’s argument that Business Corporation Law § 612 (b) barred TLC from voting its shares in favor of the merger. At the outset, defendants contend — as the Appellate Division held — that Pinnacle lacks standing, and is estopped from bringing this claim, because it failed to vote its shares against the merger. In support of this argument, defendants rely on the general principle that a shareholder who participated in an activity may not subsequently challenge its legality in a derivative suit
 
 (see, Diamond v Diamond,
 
 307 NY 263, 266 [plaintiff who had participated in corporate action estopped from bringing suit challenging that action]). In addition, defendants cite cases finding estoppel where shareholders in closely held corporations did not oppose the challenged actions
 
 (see, e.g., Kranich v Bach,
 
 209 App Div 52, 54 [1924];
 
 Winter v Bernstein,
 
 149 Misc 2d 1017, 1020,
 
 affd as mod
 
 177 AD2d 452).
 

 While it might be reasonable to expect a shareholder in a close corporation to object affirmatively to an action before bringing suit, the dynamics are quite different in a publicly traded corporation. To be sure, a shareholder in a publicly held corporation who votes
 
 in favor of
 
 a merger — and thus participates in the challenged activity — might be deemed to have acquiesced to it
 
 (see, Vierling v West Chem. Prods.,
 
 143 AD2d 829, 830 [plaintiff who voted his shares in favor of merger estopped from bringing suit];
 
 Kahn v Household Acquisition Corp.,
 
 591 A2d 166, 176-177 [Del Sup Ct] [same]). But that does not also mean that the shareholder who abstains from voting must be estopped from later bringing suit. This is especially true where, as here, a predetermined number of affirmative votes are required to approve the merger, thus making abstention the equivalent of a negative vote
 
 (see, Pavlidis v
 
 
 *434
 

 New England Patriots Football Club,
 
 675 F Supp 696, 698-700 [D Mass] [shareholders who abstained not deemed to have acquiesced to merger where “merger approval required the affirmative vote of a majority of each class entitled to vote”]).
 

 TLC was not, in any event, barred by Business Corporation Law § 612 from voting its shares in favor of the merger. Section 612 (b) states:
 

 “Treasury shares and shares held by another domestic or foreign corporation of any type or kind, if a majority of the shares entitled to vote in the election of directors of such other corporation is held by the corporation, shall not be shares entitled to vote or to be counted in determining the total number of outstanding shares.”
 

 This section states that a subsidiary — that is, a corporation a majority of whose voting shares are owned by the parent corporation — may not vote shares held in the parent corporation (see,
 
 CIBC Bank & Trust Co. v Banco Cent. do Brasil,
 
 886 F Supp 1105, 1114 [SD NY]). The reason for this rule is that, “ [i] f cross-ownership and cross-voting of stock between parents and subsidiaries were unregulated, officers and directors could easily entrench themselves by exchanging a sufficient number of shares to block any challenge to their autonomy”
 
 (Norlin Corp. v Rooney, Pace,
 
 744 F2d 255, 262 [2d Cir]).
 

 Pinnacle argues that TLC was, in effect, a subsidiary of Leucadia, because Leucadia owned a controlling interest (56%) in MIC, and MIC, in turn, owned a controlling interest (54%) in TLC. Indeed, as noted, Gumming and Steinberg served as directors of all three companies, which supports Pinnacle’s argument that TLC was in fact under Leucadia’s control. Thus, Pinnacle contends that section 612 (b) barred TLC from voting its shares in favor of the merger.
 

 Regardless, however, of whether TLC was effectively controlled by Leucadia, section 612 (b) does not apply in this case, because that section explicitly applies only to
 
 corporations,
 
 and TLC was a partnership. Section 612 (b) is very particular: it applies only to shares held by a “domestic or foreign
 
 corporation
 
 of any type or kind” (emphasis added). In fact, section 612 (b) uses the term “corporation” no less than three times to define its scope. As the Appellate Division, trial court and the United States District Court concluded, this statute applies only to corporations — not to partnerships. We must respect the legislative judgment that the prohibition on cross-voting between parents and subsidiaries applies only to corporations.
 
 *435
 
 We note that the same policy behind section 612 (b) might support a statute barring any entity from voting shares controlled by the parent corporation. For instance, Model Business Corporation Act § 7.21 (b), and Delaware General Corporation Law § 160 (c), prohibit cross-voting where a subsidiary “directly or indirectly” owns shares in the parent corporation
 
 (see also,
 
 5 Fletcher, Cyclopedia of Private Corporations § 2040 [Perm ed]). A Delaware court explained that “indirectly” includes stock held by a “third party” or an “individual” that “would vote it as ordered by the [parent] corporation’s directors”
 
 (Italo Petroleum Corp. v Producers’ Oil Corp.,
 
 20 Del Ch 283, 289, 174 A 276, 278). Thus, had Delaware law, or the Model Act, been applicable, TLC might have been precluded from voting its shares in favor of the merger. Section 612 (b), however, specifically limits its restrictions on cross-voting to subsidiary
 
 corporations.
 
 This statute is unambiguous, and we must apply it as written.
 

 In light of our holding, we need not reach defendants’ argument regarding prelitigation demand on the corporation
 
 (see,
 
 Business Corporation Law § 626 [c]).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.
 

 *
 

 At the time, there were more than 15 million shares outstanding.