**In re David FISCHER, Debtor.**

**Bankruptcy No. 195–17119–575.**

United States Bankruptcy Court,
E.D. New York.

Aug. 29, 2000.

Isaac Nutovic, Nutovic & Associates, New York City, for David Fischer.

David A. Berger, Allegaert Berger & Vogel LLP, New York City, for Crown Heights Jewish Community Council.

Israel Weinstock, Peter A. Joseph, Weinstock, Joseph, Klatsky, Nisonoff & Schwartz, LLP, Belle Harbor, NY, for claimants.

Bruce Weiner, Rosenberg, Musso & Weiner, LLP, Brooklyn, NY, for Chapter 7 Trustee.

### OPINION CONCERNING FISCHER'S MOTION OBJECTING TO CLAIMS FILED BY CHEVRA MACHZIKET HASCHUNA, INC., AND CROWN HEIGHTS JEWISH COMMUNITY COUNCIL

LAURA TAYLOR SWAIN, Bankruptcy Judge.

This matter comes before this Court on a motion (the "Motion") by David Fischer ("Debtor" or "Fischer") to Expunge Claim Nos. 19, 114 and 117 filed by Chevra Machizet Haschuna, Inc. ("CMH"), and Claim Nos. 20, 113 and 119 filed by the Crown Heights Jewish Community Council (the "Council"). Annexed to each of the claims is a copy of the complaint in an action commenced in 1992 in the United States District Court for the Eastern District of New York, captioned *Crown Heights Jewish Community Council, Inc. v. David Fischer,* No. CV 92–2123(NG) (the "Complaint" and the "District Court Action" respectively). Fischer argues that each of the enumerated claims must be expunged because the Council and CMH are estopped by a 1998 decision in the District Court Action [1] from relitigating the factual premises of the Complaint, noting that the claims to which this motion is directed are based, at least in significant part, on the

---

1. *Crown Heights Jewish Community Council, Inc. v. Fischer,* 63 F.Supp.2d 231 (E.D.N.Y. 1999), *aff'd mem.,* 216 F.3d 1071, 2000 WL 794152 (2d Cir.2000).

factual allegations of the Complaint. Fischer also seeks to expunge Claims 113 and 119 on the ground of *res judicata,* arguing that further litigation regarding certain real property located at 556 Crown Street, Brooklyn, New York ("556 Crown Street") is foreclosed by a judgment on the merits in prior litigation concerning that property.[2] Fischer further argues that Claims 113 and 119 should be expunged on the ground that they were untimely filed and/or because they fail to articulate a specific basis for relief.

For the reasons set forth below, Fischer's motion is denied with respect to Claims 19, 20, 114 and 117. The motion is granted with respect to Claims 113 and 119 only to the extent those claims relate to 556 Crown Street.

The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. sections 157(b)(2)(B) and 1334(b) and the August 28, 1986 Order of reference of the United States District Court for the Eastern District of New York. A hearing was held on the Motion on October 26, 1999 and counsel appeared in support of their respective positions. The Court heard further argument, accepted further submissions, the last of which was received on or about June 21, 2000, and took the matter under advisement. This Opinion constitutes the Court's findings of fact and conclusions of law for purposes of Federal Rule of Bankruptcy Procedure 7052 to the extent the requirements of that Rule are applicable to the instant contested matter.

The Court has considered thoroughly all submissions and argument relating to the Motion and the decision rendered herein reflects such consideration.

## BACKGROUND

### *The District Court Action*

### *Allegations of the Complaint*

In a 62–page complaint, dated July 1, 1992, that invoked the District Court's federal question and supplemental jurisdiction, CMH and the Council (collectively, "Claimants") commenced an action against Fischer and certain of his affiliates, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 *et seq.*), and seeking to recover damages allegedly suffered by them as a result of a scheme by Fischer and his affiliates to obtain for their own benefit the title to, as well as financial proceeds from, certain real property that was allegedly meant to have been acquired on Claimants' behalf or otherwise for Claimants' benefit. (Complaint, *passim.*) The Complaint further alleged that Fischer, while a representative of the Council and/or CMH, purchased multi-unit apartment buildings in Crown Heights and that he also provided non-financial assistance in the formation of several community-based real estate investment entities and those entities' acquisition of a number of properties identified in the Complaint. The community-based investment entities, according to the Complaint, subsequently entrusted Fischer with the management of both the entities and the acquired properties. Fischer thereafter allegedly conveyed or mortgaged improperly properties originally purchased in the names of Claimants or the community-based investment entities, and/or defrauded such entities by using assets intended for their benefit to purchase property in the name of one or more of his affiliates. (Complaint, *passim.*)

The Complaint also alleged that some $20 million in state and/or federal aid that had been granted to Claimants between 1976 and 1986 "for the beneficial use of the population served by [Claimants]" had been diverted by Fischer and his affiliates for their own benefit. Claimants alleged that Fischer obtained access to the funds

---

**2.** *Crown Realty Co. v. Crown Heights Jewish Community Council et al.,* No. 7286/88, slip op. (Sup.Ct.Kings Co. April 23, 1993), *aff'd,* 219 A.D.2d 695, 631 N.Y.S.2d 539 (2d Dep't 1995).

by representing to those funding sources that the monies would be spent on properties owned or managed by CMH and Council. (Complaint ¶¶ 60–63.)

The Council is described in the Complaint as a New York not-for-profit corporation dedicated to promoting the welfare of the residents of the Crown Heights district of West Central Brooklyn, New York, including providing for the housing needs of the district's low- and moderate-income residents. CMH is described as a New York not-for-profit corporation dedicated to beneficially providing housing to Crown Heights Lubavitch residents. Fischer is described as an individual who at one time was an executive director of CMH and central administrator of the Council. (Complaint at ¶¶ 5–7.)

Claimants asserted that the acts alleged in the Complaint constituted violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 et seq.). In addition to compensatory and punitive damages under RICO, the Complaint sought an accounting and the imposition of a constructive trust with respect to the subject monies, real properties and their proceeds, as well as the cancellation of a conveyance of certain real property. State law causes of action for conversion, conspiracy to convert and unjust enrichment with respect to the state and federal aid were also asserted, all predicated on essentially the same set of operative factual allegations. Fischer was also alleged to have breached fiduciary duties to plaintiffs. (Complaint ¶¶ 154–224, 225–239, 240–243, 244–255.)

*The Summary Judgment Motions*

Following extensive discovery proceedings and motion practice, Fischer and his codefendants moved for summary judgment, seeking dismissal of the complaint on the grounds that plaintiffs had "failed to come forward with any admissible evidence indicating that defendants in fact engaged in a 'pattern of racketeering activity' by committing the underlying predicate acts charged in the complaint."

*Crown Heights Jewish Community Council, Inc. v. Fischer,* 63 F.Supp.2d 231, 237 (E.D.N.Y.1999), *aff'd mem.,* 216 F.3d 1071, 2000 WL 794152 (2d Cir.2000). The defendants also contended that plaintiffs lacked standing "because they were unable to demonstrate that they suffered any particular injury to their business or property which was proximately caused by defendants' conduct." *Id.* The motion was referred to Magistrate Judge Steven M. Gold who, in a 41–page Report and Recommendation dated December 1, 1998 (the "Report and Recommendation"), recommended that Fischer's motion for summary judgment be granted. Following a thorough analysis of the elements of the RICO causes of action, the relevant burden of proof, and plaintiffs' factual proffers, Judge Gold recommended dismissal of the RICO causes of action and "without prejudice" dismissal of the state law-based causes of action, based on his finding that Plaintiffs had failed to come forward with sufficient admissible evidence indicating that the defendants had engaged in a "pattern of racketeering activity" by committing the predicate acts (mail fraud and engaging in monetary transactions in property derived from specified unlawful activity) on which the RICO causes of action were based. *Id.,* 63 F.Supp.2d at 253–254.

By Order dated August 10, 1999, United States District Judge Nina Gershon adopted the Report "in its entirety," denying an application by the Council and CMH to reopen the record for consideration of further factual proffers. In accordance with Judge Gold's recommendation, Judge Gershon directed that summary judgment be granted on the RICO claims and that the remaining claims be dismissed without prejudice to further proceedings in state court. Judge Gershon's decision was affirmed summarily by the United States Court of Appeals for the Second Circuit on June 15, 2000.

*The Bankruptcy Proceeding and the Proofs of Claim*

On August 18, 1995 three of Fischer's purported creditors filed an involuntary

petition against Fischer under Chapter 7 of the Bankruptcy Code. Following extensive litigation, an order for relief under Chapter 7 was entered on May 5, 1998. The last day to file proofs of claim was originally set for October 6, 1998. By Order dated October 30, 1998, the deadline for filing proofs of claim was extended to November 6, 1998.

*Claim # 19*

On October 6, 1998, a proof of claim form dated October 1, 1998 was filed on behalf of CMH, reciting as its basis "Indentures vesting title to real property; fraudulent mortgages." "12/22/75 and 4/4/78" was entered in the space on the claim form calling for identification of the date the debt was incurred and, as to the dollar amount asserted, the words "See Annexed Complaint" were inserted. The form was docketed as Claim # 19 in Fischer's bankruptcy case. An "Annexed Statement to Proof of Claim of Chevra Machziket Hashchuna, Inc." that was attached to the claim form reads in its entirety as follows:

> The Debtor acquired 466 Albany Avenue, Brooklyn, New York, 1577–85 Carroll Street, Brooklyn, New York on behalf of claimant Chevra Machziket Hashchuna, Inc. on 12/22/75; 4/8/77 [sic]. See Exhibit "A" hereto, the relevant judicial filing asserting this claim.

A copy of the Complaint is also attached to the proof of claim form.

*Claim # 114*

On April 22, 1999, a proof of claim form dated April 19, 1999 was filed on behalf of CMH, reciting as its basis "Indenture vesting title to real property." It amends a previously filed claim dated "10/6/98" (presumably Claim # 19). "December 22, 1975; April 8, 1977" is entered as the date the debt was incurred, and $2,076,606 was entered as the priority portion of the claim. Item four of the form ("Total Amount of Claim at Time Case Filed") contains the following additional language: "466 Albany Avenue, 1577–85 Carroll Street, Brooklyn, New York: $3,243,315." The proof of claim was docketed as Claim # 114. An "Annexed Statement to Amended Proof of Claim of [CMH]" sets forth underlying calculations and theories of recovery under the following sub-headings: "Basis of Estimation of Rents and Profits; Total Lack of Expense Information From Debtor;" "Basis for Compounding Interest on Rents and Profits;" "Limitation Period for Calculations;" and "Debtor's Depredations; Claimant's Damages." A copy of the Complaint is among the attachments to the proof of claim form.

*Claim # 117*

On May 24, 1999, a proof of claim form, dated May 21, 1999, was filed on behalf of CMH, reciting as its basis "Indenture vesting title to real property." The form lists the date the debt was incurred as "December 22, 1975; April 8, 1977," and $747,894.80 is shown as the priority portion of claim. Item four of the form identifies the "Total Amount of Claim at Time Case Filed" as follows: "466 Albany Avenue, 1577–86 Carroll Street, Brooklyn, New York; $3,243,315." This proof of claim, which purports to amend Claim # 114, was docketed as Claim # 117. An "Annexed Statement to Amended Proof of Claim of [CMH]" includes claim basis and/or computation information under the same subheadings used in the Annexed Statement to Claim # 114 and adds a section commencing as follows:

**Further Depredations Entering Into Calculations**

> In addition to the Debtor's conveyance and/or mortgage transactions with respect to One-unit 466 Albany Avenue and 38–unit 1577–85 Carroll Street;, [sic] the total mortgage and conveyance receipts generated by the *further* group of multi-unit apartment properties acquired by the Debtor *via* his receipt of the aforesaid mortgage and conveyance receipts are additionally claimed.

(Emphasis in original). Twenty-one properties are listed in this new section and, as to each property, estimates are given of the receipts Debtor may have had with respect to mortgages, additional conveyances or rentals. A copy of the Complaint is included among the attachments to the proof of claim form.

*Claim # 20*

On October 6, 1998, a proof of claim form dated October 1, 1998 was filed on behalf of the Council, reciting as its basis "Debtor's acquisition of real property as claimant's fiduciary." The proof of claim form was docketed as Claim # 20. "2/9/84" is listed as the date the debt was incurred. The words "See Annexed Complaint" are inserted in the blanks for quantification of the claim. An "Annexed Statement to Proof of Claim of Crown Heights Jewish Community Council, Inc." states in its entirety:

> The Debtor acquired Block 1417, Land Map, County of Kings on behalf of claimant Crown Heights Jewish Community Council, Inc. on 2/9/84. See Exhibit "A" hereto, the relevant judicial filing asserting this claim.

A copy of the Complaint is attached to the proof of claim.

*Claim # 113*

On April 22, 1999, a proof of claim form dated April 19, 1999 was filed on behalf of the Council, reciting as its basis "Indenture vesting title to real property." This claim, which purports to amend Claim 20, was docketed as Claim # 113. "February 9, 1984" is entered as the date the debt was incurred, and $1,079,217 is entered as the priority portion of the claim. As to the "Total Amount of Claim at Time Case Filed," the following language appears: "Block 1417, County of Kings; $10,591,-151." The "Annexed Statement to Amended Proof of Claim of [the Council]" sets forth a narrative of the details underlying the calculations and theories of recovery under the same sub-headings used in the Annexed Statement to Claim # 114. The

Annexed Statement to Claim # 113 refers to property located at 701 Empire Boulevard, 1577–85 Carroll Street, 556 Crown Street and 527–47 Empire Boulevard. A copy of the Complaint is included among the attachments to the proof of claim.

*Claim # 119*

On May 24, 1999, a proof of claim form dated May 21, 1999 was filed on behalf of the Council, reciting as its basis "Indenture vesting title to real property." The date the debt was incurred is listed as February 9, 1984, the priority portion of the claim is identified as $2,255,178, and, as to the "Total Amount of Claim at Time Case Filed," the form states: "560–70 Crown Street, Brooklyn, New York; $10,-591,151." This claim purports to amend Claim # 113 and was docketed as Claim # 119. The Annexed Statement to Amended Proof of Claim contains information under the same sub-headings used in the Annexed Statement to Claim # 113 and adds a new section commencing:

**Further Depredations Entering Into Calculations**

> In addition to the Debtor's conveyance and/or mortgage transactions with respect to Block 1417, County of Kings, "Crown Palace Hotel"; and 527–47 Empire Boulevard, the total mortgage and conveyance receipts generated by the *further* group of multi-unit apartment properties acquired by the Debtor *via* his receipt of the aforesaid mortgage and conveyance receipts are additionally claimed.

(Emphasis in original). Twenty-one properties are listed and estimates are given for each property as to the receipts Debtor may have had with respect to mortgages, additional conveyances or rentals. A copy of the Complaint is included as an attachment to the proof of claim form.

### DISCUSSION

*Fischer's Objection to All Claims*

Fischer seeks expungement of each of the foregoing claims, noting that a copy of

the Complaint is annexed to each of the claims and arguing that the doctrine of *res judicata* precludes CMH and Council from asserting any claims that are based on the Complaint.

■ The term *res judicata* is commonly used to refer to two doctrines generally precluding relitigation: issue preclusion (often referred to as "collateral estoppel") and claim preclusion (often referred to as *"res judicata"*). *Allen v. McCurry,* 449 U.S. 90, 94 n. 5, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The claim preclusion element of this set of doctrines, which precludes a litigant from advancing in a new action all claims or defenses that were or could have been raised in a prior proceeding arising from the same underlying transaction in which the same parties or their privies were involved and that resulted in a final judgment on the merits (*see Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir.1985)), is not at issue in connection with this branch of Debtor's Motion. Council and CMH do not rely on their RICO causes of action as a potential basis for recovery on their claims in Debtor's bankruptcy case; Debtor acknowledges that the state law-based causes of action asserted in the Complaint were dismissed "without prejudice" for lack of subject matter jurisdiction in light of the dismissal of the RICO claims. "A dismissal of an action *without prejudice* is an indication that the judgment is not on the merits and will therefore have no preclusive effect." 18 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE, § 131.54[1] (3d ed.1997). *See also St. Pierre v. Dyer,* 208 F.3d 394, 400 (2d Cir.2000) ("a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and hence has no res judicata effect"); *Raine v. Paramount Pictures Corp.,* 1998 WL 655545 * 8 (S.D.N.Y. Sept.24, 1998) (" '[i]t is well established that a dismissal without prejudice has no res judicata effect on a subsequent claim' " (citation omitted)).

■ Fischer's Motion raises the question of whether issue preclusion nonetheless effectively bars pursuit of the state law theories of recovery on which Claimants currently rely. Citing the District Court's findings that CMH and Council failed to produce admissible evidence that they received approximately $20 million in public monies, that Fischer embezzled funds from them, or that he deprived them of their beneficial interest in certain real property, Fischer argues that the Council and CMH are now precluded from relitigating the allegations of embezzlement and improper real estate transactions that form the common basis of the RICO claims and the state law causes of action. Fischer argues that, because the doctrine of issue preclusion applies to prevent Claimants from seeking to prove before this Court the alleged improper conduct, their claims must be expunged.

■ Because Judge Gold's Report and Recommendation, as adopted by the District Court, was rendered in the context of federal causes of action, the extent to which it operates to preclude subsequent litigation is determined pursuant to federal, rather than state law, standards. *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 41 (2d Cir.1986). In this Circuit, "[i]n order for collateral estoppel to apply the court must determine that '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.' " *New York v. Julius Nasso Concrete Corp.,* 202 F.3d 82, 86 (2d Cir.2000) (citation omitted). *See also Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992).

Fischer argues that the issues of whether there was a diversion or conversion of $20 million in funds and whether CMH or

Council have a beneficial ownership in certain real properties were actually litigated and decided in the District Court Action, that CMH and Council had a full and fair opportunity to litigate those issues, and that the determination of those issues was necessary to support the District Court's dismissal of the Complaint. The District Court's finding that Plaintiffs could not sustain the allegations underlying the federal claims due to a failure to identify admissible evidence, Fischer argues, precludes litigation of the Council's and CMH's claims in the context of this bankruptcy proceeding because the same evidentiary hurdles must be met in order to sustain the state law claims. In asserting that the District Court decision "discredit[ed]" the operative allegations of the Complaint, Fischer may also be taking the position that Judge Gold's recommended holdings should be construed as factual findings negating the allegations of the Complaint.

Fischer's argument fails, in either event, because the issue Judge Gold determined in each instance was the sufficiency of the evidence offered by the Council and CMH in the District Court Action, not the truth or falsity of their factual allegations. Although Fischer had apparently proffered an affidavit and other evidence purporting to refute on the merits plaintiffs' claims in the District Court Action (*see, e.g.,* 63 F.Supp.2d at 241–42) and Judge Gold could have recommended factual findings based on that evidence in light of the plaintiffs' complete failure to present admissible evidence controverting it (*see* 63 F.Supp.2d at 245), Judge Gold chose instead to analyze plaintiffs' evidence, finding it insufficient to meet the applicable burden of proof and dismissing the RICO claim on that basis.[3] It is well established that a motion for summary judgment may be sought and granted based on a showing that the party with the burden of proof is unable to meet that burden, rather than based on evidence establishing the truth of defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where such lack of evidence is found, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she had the burden of proof" (*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548), rather than because the court necessarily found persuasive the defendant's account of the relevant facts. The court need not assess the credibility or the legal significance of the evidence proffered by the defendant under such circumstances because the failure of proof "necessarily renders all other facts immaterial." *Id.* Indeed, a moving party seeking judgment on this basis is not required to submit any evidence at all. *Id.* at 323, 106 S.Ct. 2548.[4]

---

3. Judge Gold did not explain his decision not to evaluate whether defendants' evidence was dispositive of the factual issues presented. Perhaps earlier state court findings that Fischer was not a credible witness gave him pause (*cf. Crown Realty, supra* note 2, slip op. at 5). Perhaps it was because Fischer's summary judgment motion was directed to plaintiffs' ability to meet their burden of proof rather than premised on a lack of controversy as to the propriety of his actions. It is impossible and, fortunately, unnecessary, for this Court to understand why Judge Gold took the approach he did. This Court's task is to determine the legal effect of the decision that was recommended by Judge Gold and adopted by the District Court.

4. Summary judgment thus rendered in favor of a defendant is no less a judgment on the merits, triggering claim preclusion under appropriate circumstances, than is a judgment rendered based on a finding that defendant is entitled on the undisputed facts to judgment as a matter of law. *Ruple v. City of Vermillion,* 714 F.2d 860, 862 (8th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). *See also* 18 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE, § 132.03[2][j] (3d ed.1997); *Bloomquist v. Brady,* 894 F.Supp. 108, 116 (W.D.N.Y.1995). Issues actually and necessarily decided in the summary judgment context may provide a basis for issue preclusion as well. *Exhibitors Poster Exchange v. National Screen Service,* 421 F.2d 1313, 1319 (5th Cir.1970), *cert. de-*

Although the Report and Recommendation makes clear that the issues of Claimants' receipt of government funds, alleged embezzlement by Fischer, and alleged improprieties in real estate transactions were actually litigated between these parties before the District Court, they were not necessarily decided—indeed, they were not decided at all. After an exhaustive review of plaintiffs' allegations and proffered "evidence," and after detailing the substantive and procedural deficiencies of the material submitted by the Council and CMH in the District Court Action, Judge Gold held that "Plaintiffs have failed to identify admissible evidence sufficient to raise genuine questions of fact for trial with respect to their claims that defendants caused them injury by committing mail fraud or engaging in monetary transactions in property derived from specified unlawful activity." Based upon that finding, which was all that was necessary to support the Court's legal conclusion that the RICO allegations could not be sustained, Judge Gold recommended "that defendants' motion for summary judgment on plaintiffs' RICO claims be granted." *Crown Heights Jewish Community Council*, 63 F.Supp.2d at 253–54. Under these circumstances, it cannot be said that the issues of whether Fischer engaged in improper real estate transactions, whether Claimants received federal funds to the extent alleged in the Complaint, or whether Fischer embezzled such funds, were either actually or necessarily decided within the meaning of the collateral estoppel doctrine. Claimants are not precluded from seeking to prove in the context of this bankruptcy case the truth of their factual assertions.

The collateral estoppel cases upon which Fischer relies do not compel a different result. In *Pinnacle Consultants, Ltd. v. Leucadia National Corp.*, 94 N.Y.2d 426, 706 N.Y.S.2d 46, 727 N.E.2d 543 (N.Y. 2000), the District and Circuit courts had made specific findings in prior RICO litigation as to the legality of the conduct on which the claims in the second action were based. The prior holdings—that certain corporate warrants had been validly issued, that no fraud had been shown in their issuance, and that the corporate directors' business judgment was conclusive on the issue of valid consideration for the warrants—precluded later state court litigation of claims that the issuance of the warrants constituted corporate waste and a breach of fiduciary duty. *Id.* at 430–32, 706 N.Y.S.2d 46, 727 N.E.2d 543. There were no such specific findings on the operative factual and legal issues in the District Court Action; *Pinnacle* thus does not support Debtor's contention that the disposition of the RICO claims in the prior litigation between Claimants and the Debtor precludes Claimants from pressing their state law theories in support of their claims in this bankruptcy proceeding.

*Greilsheimer v. Ferber Chan & Essner*, N.Y.L.J., Nov. 13, 1999 at 1 (Sup.Ct. N.Y.Co. Nov. 13, 1999), is also inapposite. Debtor relies on dicta in Justice Cozier's opinion, in which Justice Cozier "observe[d]" that adjudication of certain state law claims following earlier federal disposition of Lanham Act claims "would destroy or impair the rights adjudicated in the first" action if a different result were reached in the second. The *Greilsheimer* court had already rejected the state law causes of action on their merits before it reached the defendant's contention that *res judicata* would bar litigation of those claims. Furthermore, the federal court had made factual findings in the prior litigation on the issue of mootness and had determined that certain Lanham Act allegations were insufficient as a matter of law to support a claim for relief under that Act. *See Greilsheimer v. Ferber Chan & Essner*, 1998 WL 547092 (S.D.N.Y. Aug.27, 1998).

■ Here, permitting plaintiffs to go forward with their bankruptcy claims premised on state law causes of action

*nied,* 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971).

neither threatens to impair rights adjudicated in the District Court Action nor appears inconsistent with Judge Gold's intent in formulating his Report and Recommendation. This Court approaches the matter of issue preclusion with caution, bearing in mind that "since the doctrine of collateral estoppel poses a danger of placing termination of the litigation ahead of the correct result, it is narrowly applied." *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir.2000). Judge Gold's careful and detailed explication of the deficiencies in Claimants' proffer, his focus on that proffer rather than on defendants' proffer, and his reference to "further proceedings in state court" all suggest that he did not intend to foreclose all future litigation of the factual allegations set forth in the Complaint. Claim preclusion protects Fischer from reassertion of Claimants' RICO causes of action; that plaintiffs are given another chance to seek to prove their allegations of improper conduct in connection with their state law-based claims does not impair the earlier adjudication in Debtor's favor.

Fischer also relies upon *Metromedia Co. v. Fugazy*, 983 F.2d 350. In that case, unlike this one, the material factual issues had specifically been decided against the barred party in the earlier litigation. *See id.* at 366–67.

The District Court's determination that Fischer was entitled to summary judgment on the RICO claims based on the Claimants' failure to meet their evidentiary burden does not preclude the Council and CMH from asserting claims in this bankruptcy proceeding, under their state law theories, to the identified real properties and/or financial recovery based on the factual allegations that formed the core of the Complaint in the District Court Action. The Council and CMH should, however, reflect on the District Court's analysis of their prior factual proffers and must offer relevant evidence of a different quality, in appropriate form, if they mean to survive summary disposition on the merits of their claims in this proceeding. The Court's decision today does not preclude Fischer from invoking collateral estoppel as to the matters of evidentiary admissibility and interpretation on which the District Court did make findings.

### Objection to Claims 113 and 119 (556 Crown Street)

■ Fischer argues that Claims 113 and 119, filed on behalf of the Council after the bar date as "amendments" to timely-filed Claim # 20, should not be treated as amendments to the previously filed claim but, rather, constitute new, untimely claims concerning 556 Crown Street that should be expunged. The "Debtor's Depredations; Claimant's Damages" section of the "Annexed Statement" to each of the later claims represents that the Debtor acquired 556 Crown Street and other properties "on behalf of claimant Crown Heights Jewish Community Council, Inc." and asserts a right to recovery of some $2,095,810 in rents and profits in respect of that property. The Annexed Statement to Claim # 119 explains that this figure is "calculated from the [date of] Debtor's acquisition of [556 Crown Street], on claimant's behalf, as of January 11, 1982 (six years prior to commencement of [the state court action identified below])."

Fischer argues that the claim preclusion element of *res judicata* applies to bar the claims as they relate to 556 Crown Street because a final judgment was previously rendered in a state court action involving title and damages claims concerning that property. That action, captioned *Crown Realty Company v. Crown Heights Jewish Community Council, et al.*, No. 7286/88, slip op. (Sup.Ct. Kings Co. April 23, 1993) (the "State Court Action"), was commenced by Crown Realty Company, a Fischer affiliate, which sought a declaration that it was the fee owner of 556 Crown Street. The Council disputed the plaintiff's alleged ownership of the property, counterclaiming for damages and for the imposition of a constructive trust as to

the property. In a memorandum decision issued in April 1993 following a trial of the issues, the state court observed that "the crux of the defense is that plaintiff is not the rightful owner" of 556 Crown Street, held that Fischer had committed a breach of trust in acquiring 556 Crown Street for his own benefit, and further held that the Council was entitled to a constructive trust and had the right to acquire title to the property upon the payment of $115,977.62 to Crown Realty in reimbursement of that entity's costs incurred in acquiring the property. The Council's counterclaim for damages was thereupon "dismissed," as was the complaint. *Crown Realty Company v. Crown Heights Jewish Community Council, et al.*, No. 7286/88, slip op. at 15 (Sup.Ct. Kings Co. April 23, 1993), *aff'd*, 219 A.D.2d 695, 631 N.Y.S.2d 539 (2d Dep't 1995).

The Council contends that the instant claims are not barred because they seek monetary recovery in the form of rents and profits arising from the property, while, they assert, the damages sought in the state court counterclaim arose solely from Fischer's alleged improper acquisition through Crown Realty of a mortgage on 556 Crown Street, which mortgage enabled Crown Realty to acquire the property through foreclosure proceedings. The Court notes, however, that while the Third Counterclaim in the State Court Action sought damages premised on alleged fraudulent acquisition of the mortgage on 556 Crown Street, a Fourth Counterclaim sought damages in exactly the same amount, premised on all of the factual allegations underlying the counterclaims and the further general assertion that "Crown knowingly and wilfully breached its fiduciary duty and confidential relationship with ... the Council." (Council's Answer and Counterclaims in *Crown Realty*, ¶¶ 41–47.)

To determine whether the claim asserted in this bankruptcy proceeding is precluded by the prior state court judgment, the Court looks to the doctrine of *res judicata* as developed in the New York state courts.

[U]nder the Full Faith and Credit Act, a federal court must give the same preclusive effect to a state court judgment as another court of that State would give. "It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it ... commands a federal court to accept the rules chosen by the State from which the judgment is taken."

*Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (citation omitted).

Under New York law, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." ... "[U]nder the 'transactional analysis' approach adopted by the [New York State] Court of Appeals, the doctrine of *res judicata* also operates to preclude the litigation of matters that could have or should have been raised in a prior proceeding arising from the same 'factual grouping,' 'transaction,' or 'series of transactions.'" ... Following a valid final judgment, therefore, *res judicata* bars future litigation between the same parties, or those in privity with them, on the same cause of action.'

*Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir.1997) (citations omitted).

Here, a final judgment has been rendered by the state court in the *Crown Realty* litigation concerning title to 556 Crown Street; that decision was affirmed on appeal. The Council asserted that defendant Crown Realty was the proxy of David Fischer in that litigation, and that Crown Realty's acquisition of the property constituted a breach of Fischer's duties to the Council. Thus both litigations involve the same parties or their privies.

The cause of action is the same as well. The claims litigated in *Crown Realty* centered on ownership of the property and rights appurtenant thereto. It is clear on the face of the pleadings in *Crown Realty* that the Council's claims for damages and a constructive trust were premised on its contention that it, rather than Crown Realty, was the rightful owner of the property and therefore entitled to the benefits and profits to be derived therefrom. In this bankruptcy proceeding, the Council's Claims 113 and 119 introduce the claim for rents in respect of 556 Crown Street with the representation that Debtor acquired the property "on [the Council's] behalf" rather than for himself, and seek damages calculated from the date of that acquisition. *See* Annexed Statement to Amended Claim (relating to Claim # 113) at 3–4; Annexed Statement to Amended Claim (relating to Claim # 119) at 3, 4. Claims 113 and 119 thus clearly arise from the same transaction or "factual grouping" (*i.e.,* the Crown Realty acquisition of 556 Crown Street) as the *Crown Realty* litigation.

The Council's claim for recovery of rental proceeds is therefore barred by the doctrine of *res judicata* or claim preclusion. The State Court Action concerned rightful ownership of 556 Crown Street; rights to rental proceeds are a basic incident of ownership. A claim for the rents could have been raised and litigated in the state court proceedings. *See Computer Associates International, Inc. v. Altai, Inc.,* 126 F.3d 365, 369 (2d Cir.1997). It is a "well-established rule that a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories. . . ." *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 110 (2d Cir.2000). Indeed, it is far from clear that Claimants are correct in characterizing their damages counterclaim in *Crown Realty* as limited to the mortgage transaction (*compare* the Council's Third Counterclaim *with* the Council's Fourth Counterclaim in *Crown Realty*).

Claims 113 and 119 are therefore expunged to the extent they seek relief in respect of 556 Crown Street. Because the Court holds that claims 113 and 119 are barred by *res judicata* to that extent, the Court need not reach Debtor's contention that those claims should be stricken as to 556 Crown Street as untimely and/or because they fail to articulate a specific basis for relief.

### CONCLUSION

For the reasons set forth above, Debtor's motion to expunge Claims 19, 20, 114 and 117 is denied. The motion to expunge is granted with respect to Claims 113 and 119 solely to the extent it is directed to those portions of Claims 113 and 119 that relate to 556 Crown Street.

The Court will enter an order consistent with the foregoing opinion.