■ AUDRA ALLEN, Appellant, v HOFFINGER, FRIEDLAND, DOBRISH & STERN, P. C., Formerly Known as HOFFINGER, FRIEDLAND, DOBRISH, BERNFELD & STERN, P. C., et al., Respondents. [726 NYS2d 18] —Judgment, Supreme Court, New York County (Franklin Weissberg, J.), entered April 20, 2000, which granted defendants' motion and dismissed plaintiff's complaint pursuant to CPLR 3211 (a) (5), unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated. Appeal from order, same court and Justice, entered April 13, 2000, which granted defendants' motion to dismiss the complaint, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiff Audra Allen met John G. Allen in 1981 while they were both patients at Silver Hill Psychiatric Hospital, and they were subsequently married in January 1990. In September

1996, John served Audra with a complaint seeking an annulment of the marriage and, after issue was joined, Justice Joan Lobis directed that jury selection commence on January 30, 1997. Audra had retained defendant law firm to represent her in that action.

On January 3, 1997, John sought and obtained leave to amend his complaint to withdraw his claim for an annulment and to seek a divorce on the grounds of cruel and inhuman treatment. Audra thereafter moved, by order to show cause, for the production of John's hospital and treating physician's records and directing that he submit to an examination by a court-appointed psychiatrist. Justice Lobis issued an order which, *inter alia*, adjourned the trial date to March 13, 1997 so that Audra could retain an expert psychiatrist. Audra subsequently moved for an order directing John to pay interim counsel fees of $75,000, plus an additional $3,000 in fees for the retention of the psychiatric expert. The court, however, declined to award any additional counsel fees, observing that substantial payments had already been made and expressing concern that unreasonable legal fees were being generated by the strategy adopted by Audra's counsel.

By letter dated March 5, 1997, Robert Dobrish, Audra's attorney, advised Justice Lobis that he had a previous commitment to attend the annual meeting of the American Academy of Trial Lawyers in Mexico and would, consequently, be unavailable to appear for jury selection on March 13, 1997. Mr. Dobrish also took issue with Justice Lobis's denial of interim counsel fees and by order to show cause returnable on March 11, 1997, defendant law firm moved to be relieved as counsel, asserting, *inter alia*, that the court's refusal to award further interim fees reflected the court's predisposition against Audra; and that any future applications for legal fees would have to be evaluated in light of the court's perception of the reasonableness of the actions taken by counsel in advancing their client's position. Defendant opined that it could not be placed in the position of determining its future strategy based upon whether it would meet the court's approval.

On March 13, 1997, Mr. Dobrish did not appear and in his stead, Eric Wrubel, an associate of defendant firm, and Jack Hoffinger, a partner of Mr. Dobrish, appeared on behalf of Audra. The court denied defendant's motion to be relieved, as well as a motion that the court recuse itself, and directed the parties to jury selection. Mr. Wrubel, however, refused, and noted that he was not prepared for trial, he did not yet have an expert, and Mr. Dobrish was unavailable. The court responded

by indicating that counsel had been aware of the jury selection date for more than six weeks and had been granted leave to retain an expert approximately three weeks earlier.

Mr. Wrubel still refused to proceed to jury selection, stating, rather pointedly, that "I'm not going to select a jury. If you want me to enter a default, have an inquest. I don't care. We are not going to proceed in this case. I think it should be adjourned." The court, after noting that the application for an adjournment had already been denied, directed an inquest to be held within two hours. After recess, counsel again indicated that he was not ready to go forward despite the court's offer to adjourn the matter for a day. The court then held an inquest on whether grounds for divorce existed, at which time John testified that he was fearful of his wife, that she threatened to institutionalize him, threw objects at him, bent his fingers back on different occasions, and smashed his electronic pain reliever on the floor. Audra's counsel refused to participate in the inquest in any manner and the court granted the divorce on the grounds of cruel and inhuman treatment.

Audra thereafter moved to vacate the default, which the court denied in a decision and order dated September 11, 1997. The judgment of divorce was entered and shortly after a trial on finances was completed, John died of a drug overdose. Since the Allens were no longer married at the time of John's death, Audra did not have a right to an elective share of John's estate. This Court subsequently affirmed the Supreme Court's denial of the motion to vacate the default, finding that Audra had failed to establish a reasonable excuse for the default and that "defendant also failed to make the requisite showing of a meritorious defense" (*Estate of Allen v Allen*, 258 AD2d 423).

Audra subsequently commenced this action for legal malpractice in August 1999, asserting that had it not been for defendant's malpractice, she would have still been married to John at the time of his death and, therefore, would have been entitled to an elective share of his estate. Defendant moved to dismiss on the grounds that this Court found, on the appeal from the default, that Audra did not have a meritorious defense. The motion court granted defendant's motion and dismissed the complaint, finding that the issue of whether Audra had a meritorious defense had been fully litigated. We disagree and reverse.

In order to state a cause of action sounding in legal malpractice, plaintiff must demonstrate that defendant failed to exercise that degree of care, skill and diligence commonly exercised by an ordinary member of the legal community, and

that but for the attorney's negligence, plaintiff would have prevailed in the underlying action (*Roemer v Levy*, 280 AD2d 592; *Suydam v O'Neill*, 276 AD2d 549; *23 Realty Assocs. v Zack*, 255 AD2d 111).

Defendants now maintain that plaintiff is collaterally estopped from establishing the "but for" element of her claim for legal malpractice as a result of the this Court's finding that Audra failed to establish a meritorious defense.

The doctrine of collateral estoppel, or issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party * * * whether or not the tribunals or causes of action are the same." (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500; *see also, Pinnacle Consultants v Leucadia Natl. Corp.*, 94 NY2d 426, 431-432; *Color by Pergament v O'Henry's Film Works*, 278 AD2d 92, 93-94). The doctrine applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, *and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action*." (*Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 349 [emphasis added]; *see also, Pinnacle Consultants v Leucadia Natl. Corp., supra*, at 431; *Grassini v Paravalos*, 270 AD2d 52, 53; *Frank's Rest. v Lauramar Enters.*, 273 AD2d 349.)

In this matter, we find defendants' steadfast refusal to pick a jury, or in any way participate in the inquest, deprived plaintiff of a "full and fair opportunity" to litigate, much less raise, an issue in the underlying divorce action (*see, Nappe v Correri & Sapienza*, 181 AD2d 664). We do not, at this juncture, pass on whether plaintiff does, in fact, possess a viable defense to the divorce action, but merely provide her with an opportunity to establish that such a defense exists. Concur—Nardelli, J. P., Mazzarelli, Andrias, Saxe and Friedman, JJ.