**In re David FISCHER, Debtor.**

No. 95–17119–608.

United States Bankruptcy Court, E.D. New York.

March 2, 2001.

Heller, Horowitz & Feit, P.C., New York, for Gitel Fischer and Crown Montgomery Homes, Inc.

Nutovic & Associates, New York, for David Fischer, Debtor.

Weinstock, Joseph, Klatsky & Schwartz, LLP, Belle Harbor, for Claimant Chevra Machziket Hashchuna, Inc.

Rosenberg, Musso & Weiner, Brooklyn, for Robert Musso Chapter 7 Trustee.

Allegaert, Berger & Vogel LLP, Bauman Katz & Grill LLP, New York, for The Crown Heights Jewish Community Council, Inc.

## MEMORANDUM OPINION

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of the debtor, David Fischer ("debtor" or "Fischer") for summary judgment expunging claims filed by Crown Heights Jewish Community Council (the "Council") and Chevra Machziket Hashchuna, Inc. ("CMH") (collectively, "Claimants"), and on Claimants' motions for partial summary judgment. For the reasons set forth in this opinion, Fischer's motion for summary judgment is granted, and Claimants' motions are denied.

### Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(B) and the Eastern District of New York Standing Order of Reference dated August 28, 1986.

### Procedural History

On August 15, 1995, an involuntary petition was filed against Fischer, and on May 6, 1998, an order for relief was entered against Fischer under chapter 7 of the Bankruptcy Code.

Fischer objects to claims numbers 20, 113 and 119 filed by the Council, and to claims numbers, 19, 114 and 117 filed by CMH (collectively, the "Claims"). Although some of the Claims were filed after the November 6, 1998 bar date, Fischer seeks the disallowance of the Claims on the merits.

The Claims, and Fischer's objections thereto, are the latest battle in a litigation war that has been waged between Fischer and Claimants for almost a decade. Each of the Claims annexes, by way of explanation of the basis for the amounts demanded, a copy of the complaint in the action entitled *Crown Heights Jewish Community Council, Inc. v. Fischer,* 63 F.Supp.2d 231 (E.D.N.Y.1999), *aff'd mem.,* 216 F.3d 1071 (2d Cir.2000), which was commenced in 1992 in the United States District Court for the Eastern District of New York (the "District Court Action"). In the District Court Action, the Council and CMH asserted claims against Fischer and twenty other defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1961–68 (West 2000), as well as claims against Fischer

under New York law, including claims for breach of fiduciary duty, embezzlement, and falsification of business records. In a Report and Recommendation dated December 1, 1998 (the "Report") *, United States Magistrate Judge Steven M. Gold recommended dismissal of the RICO claims, and dismissal, without prejudice, of the state law causes of action. The Report was adopted in its entirety by the District Court, after *de novo* review, and the District Court's judgment dismissing the District Court Action was affirmed by the Second Circuit.**

After the district court entered its judgment dismissing the District Court Action, Fischer sought to expunge the Claims in this Court based on collateral estoppel and res judicata, arguing that those doctrines should apply because the Claims are based entirely on the allegations of the District Court complaint, and the state law claims asserted in the District Court complaint, although dismissed without prejudice, are based upon the same factual allegations as the dismissed federal claims. In an opinion dated August 29, 2000, the Honorable Laura Taylor Swain, to whom this case was then assigned, denied Fischer's motion, holding that the dismissal of the District Court Action had been based upon the insufficiency of the evidence offered by the plaintiffs and could not be construed as a factual finding in favor of the defendants. *In re Fischer*, 252 B.R. 603 (Bankr. E.D.N.Y.2000). Judge Swain pointedly noted, however, that

> [T]he Council and CMH should … reflect on the District Court's analysis of their prior factual proffers and must offer relevant evidence of a different quality, in appropriate form, if they mean to survive summary disposition on the merits of their claims in this proceeding. The Court's decision today does not preclude Fischer from invoking

collateral estoppel as to the matters of evidentiary admissibility and interpretation on which the District Court did make findings.

*Id.* at 612.

Fischer now seeks summary judgment expunging the Claims on the merits. In response, Claimants have placed before the Court portions of the record on the summary judgment motion in the District Court Action, and have also proffered several items that they claim constitutes new evidence supporting their claims. Fischer argues that the new evidence is inadmissible or otherwise insufficient to defeat summary judgment. Fischer further argues that the Claims are barred by the applicable statute of limitations. Fischer's statute of limitations argument will be addressed first, and Claimants' evidentiary offerings will be then examined for sufficiency on the merits of the Claims.

*Standard for Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr.P. 7056(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[O]n summary judgment the inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court's function is not to resolve disputed issues of fact, but

---

* *Crown Heights Jewish Community Council, Inc. v. Fischer*, CV 92–3123(NG) (E.D.N.Y. December 1, 1998) (Report and Recommendation) (annexed as Fischer's Summ. J. Mot. Ex. 8).

** Magistrate Judge Steven M. Gold's report is cited as *Fischer*, 63 F.Supp.2d at 236–254.

only to determine whether there is a genuine issue to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the initial burden of demonstrating the non-existence of any genuine issue of material fact, which burden may be discharged by pointing out the absence of evidence supporting the non-moving party's case. *Celotex,* 477 U.S. at 323–325, 106 S.Ct. 2548. Once faced with a properly supported motion, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his or her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. 2505.

The non-moving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id.* at 257, 106 S.Ct. 2505. Therefore, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348, or simply raise doubts as to the veracity of the moving party's assertions. *Borgognone v. Trump Plaza,* No. 98–CV–6139(ILG), 2000 WL 341135, at * 7 (E.D.N.Y. March 9, 2000); *Fischer,* 63 F.Supp.2d at 240–241, *citing, Claudio v. United States,* 907 F.Supp. 581, 584 (E.D.N.Y.1995); *Harper v. United States,* 949 F.Supp. 130, 131–132 (E.D.N.Y.1996).

A mere scintilla of evidence is insufficient to defeat a properly presented summary judgment motion. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Conclusory allegations, conjecture and speculation will not create a genuine issue of fact. *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998). The Court may consider the entire record, not just the evidence highlighted by the parties. *See Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir.1996).

Rule 56(e) further provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein." Therefore, hearsay testimony contained in an affidavit may not be considered on summary judgment unless it would be admissible at trial pursuant to one of the exceptions to the hearsay rule. *See H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–455 (2d Cir.1991). To the extent that a Rule 56(e) affidavit contains inadmissible hearsay which references other evidence that is properly before the court, the court may disregard the hearsay and separately consider the admissible evidence. *John Hancock Property and Cas. Ins. Co. v. Universale Reinsurance Co., Ltd.,* 147 F.R.D. 40, 45 (S.D.N.Y.1993). It is also well established that "a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987). Otherwise, "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony," thus "diminishing the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

When no rational trier of fact could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact requiring a trial and a grant of summary judgment is proper. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

*The Claims*

The Council is described in the District Court complaint as a New York not-for-profit corporation dedicated to promoting the welfare of the residents of Crown Heights, including providing for the housing needs of the neighborhood's low and moderate-income residents. CMH is described as a New York not-for-profit corporation dedicated to beneficially providing housing to Crown Heights Lubavitch residents. Fischer is alleged to have been, at one time, executive director of CMH, and is alleged to have been the "head of the development of Crown Heights housing which is the housing arm of the Council" from 1973 to 1986. (CMH E.D.N.Y. LBR 9056–1 Stmt. ¶ 1; Council E.D.N.Y. LBR 9056–1 Stmt. ¶ 21). According to the Council, the "activities" of CMH "were essentially merged into those of the Council" in the early 1980s, and this entitles the Council to assert an interest in the properties claimed by CMH. (Council's Memorandum of Law in Opposition to Fischer's Motion for Summary Judgment ("Council's Mem. 11/6/00") at 6).

*Council's Claims*

The Council's Claims are not precise or specific, instead incorporating by reference the entire District Court complaint. However, at this juncture, the only claims with respect to which the Council contends that it has come forward with evidence sufficient to defeat summary judgment are its claims relating to Fischer's acquisition of certain property comprising Kings County Land Map Block 1417 (the "Hotel Property") from Methodist Hospital for development into a hotel, and its claims for the return of certain residential properties owned by Fischer. The Council claims, variously, that Fischer misappropriated a corporate opportunity of the Council when he acquired the Hotel Property, or that Fischer in fact acquired the Hotel Property for the Council's benefit, and breached a fiduciary duty to the Council in refusing to reconvey the Hotel Property to the Council, or that Fischer fraudulently failed to disclose to the Council that he was acquiring the Hotel Property for his own benefit. The Council also seeks an accounting from Fischer with respect to the Hotel Property. In addition, the Council seeks the return of residential properties located at 466 Albany Avenue, 1577–85 Carroll Street, 824–36 Montgomery Street, and 527–47 Empire Boulevard (the "Residential Properties"), which it claims were misappropriated by Fischer.

The Council apparently concedes that insufficient evidence currently exists to survive summary judgment dismissing the claim that Fischer misappropriated $20 million in government grant funds intended for the Council (which claim is also asserted in the District Court complaint). The Council nevertheless urges that Fischer's summary judgment motion with respect to this claim be denied pursuant to Fed. R. Bankr.P. 9056(f) so that it can seek discovery from the Department of Housing Preservation and Development of the City of New York and the United States Internal Revenue Service relating to the grants obtained by Fischer, the basis on which they were obtained, and how they were spent. Attorneys for the Council first requested these documents pursuant to applicable freedom of information laws in July 2000, and state that as of the date the motion was briefed, there has been "no substantive response" to their request. (Berger Decl. 11/6/00 ¶ 5). The Council also requests that Fischer's motion for summary judgment dismissing its claims to the Residential Properties be denied under Fed. R. Bankr.P. 7056(f), citing a need for unspecified additional discovery.

*CMH Claims*

CMH's claims are based on their contention that Fischer's acquisition of 466 Albany Avenue and 1577–85 Carroll Street, Brooklyn, New York, in 1975 and 1977, respectively, constituted a misappropriation of those properties from CMH, or that the properties were in fact acquired by

Fischer for CMH, and that the properties in question belong to CMH.

### Statute of Limitations

Fischer contends that the Council's claims with respect to the Hotel Property were asserted after the expiration of the statute of limitations, and must therefore be dismissed.

 The statute of limitations for diversion of a corporate opportunity is the three-year limitations period for injuries to property. C.P.L.R. § 214 (McKinney 1990); *Powers Mercantile Corp. v. Feinberg*, 67 N.Y.2d 981, 502 N.Y.S.2d 1001, 494 N.E.2d 106 (1986) (Mem.), *aff'g*, 109 A.D.2d 117, 490 N.Y.S.2d 190 (1st Dep't 1985). When, however, the defendant is a "present or former director, officer or stockholder" of a corporation which is seeking "to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting in conjunction therewith," the limitations period is six years. C.P.L.R. 213(7); *Whitney Holdings, Ltd. v. Givotovsky*, 988 F.Supp. 732, 742 (S.D.N.Y.1997). A claim for diversion of a corporate opportunity accrues when the corporate opportunity is diverted, and the limitations period is not tolled by the plaintiff's failure to discover the wrong, unless the plaintiff makes a showing of actual fraud by the defendant, which would make applicable the limitations period prescribed in C.P.L.R. 213(8); *Whitney Holdings*, 988 F.Supp. at 744.

It is undisputed that an action asserting the Council's claim with respect to the Hotel Property was not commenced until July 2, 1992. It is necessary, therefore, to determine when the Council's claim accrued.

The record contains evidence, which has not been controverted by the Council, that the contract to buy the Hotel Property from Methodist Hospital was entered into on July 16, 1981. This evidence consists of the Declaration of David Fischer, sworn to November 16, 2000, in which Mr. Fischer states "the contract to purchase the Methodist Hospital Property [Berger Decl. 11/6/00 Ex. 11] was executed on *July 16, 1981*. That contract calls for a down payment of $100,000, which I made on *July 16, 1981* with my own funds, as I testified to at my deposition on October 26, 2000 and which the contract acknowledges was paid *upon signing*." (Fischer Decl. 11/16/00 ¶ 8). (Emphasis in original.) Although the Council has argued that, because the contract was dated "as of" July 16, 1981, it could have been signed on a different date, no evidence has been submitted from which an inference could be drawn that the contract was in fact signed on any date other than July 16, 1981, as Fischer asserts.

The Council makes a convoluted argument that deposition testimony given by Fischer in a 1987 state court action constitutes evidence that the down payment on the contract to purchase the Hotel Property made on or after July 31, 1981, and that the agreement to purchase the Hotel Property was therefore entered into on or after that date. (*See* Letter from Berger to the Court of 1/16/01). The argument goes like this: Fischer testified, at a deposition in 1988, that Mr. Chanin helped him to get a loan from Mr. Lauffer. The loan from Lauffer was obtained on July 31, 1981. Later in the deposition, when asked whether he sought the assistance of Mr. Chanin to borrow money to purchase the Hotel Property, he testified:

> What do you mean, did I seek assistance to Mr. Chanin to borrow money? Like I stated before, Mr. Chanin, I came to him, and he was a guy who was a good friend of mine all the years, and he was trying, if I needed something, he maybe tried to help me, but I paid interest on each loan he tried to help me on. It was not the way I helped the people. I gave in the last years, ten years, 15 years of Crown Heights hundreds, thousands of loans. I never took interest on that.

That is not really called help if at the time you need you pay interest also, and if Mr. Chanin consider[s] that a big favor, let him keep it. Mr. Listman also gave me a big loan to buy Crown Palace Hotel. Therefore, is what?

(Fischer Dep. 6/20/88 annexed as Berger Decl. 11/6/00 Ex. 6 at 150).

The Council argues that because Fischer used the word "also" in the next to last quoted sentence, the Lauffer loan must have been made to finance the purchase of the Hotel Property, and therefore the contract was not entered into until July 31, 1981, at the earliest.

This Court is mindful that all inferences from the evidence must be drawn in favor of the party opposing summary judgment. *Matsushita*, 475 U.S. at 574, 106 S.Ct. 1348. However, in order to defeat a motion for summary judgment, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Applying this standard, this Court does not believe that any inference can reasonably be drawn from the proffered deposition testimony that the Lauffer loan was made to finance the acquisition of the Hotel Property. (Fischer Decl. 11/16/00 ¶¶ 6–8). Accordingly, this Court finds that, for the purposes of this motion for summary judgment, Fischer has established that the contract to purchase the Hotel Property was signed, and the down payment made, on July 16, 1981.

■ The Council has argued that, because the entity that entered into the contract on July 16, 1981 was a nominee, rather than Fischer himself or an entity owned by him, no cause of action accrued against Fischer in 1981. The Council's position seems to be that the earliest point at which a cause of action could have accrued against Fischer was in 1983, when the contract was assigned to Crown–Montgomery Homes, Inc., a Fischer-owned entity. (*See* Berger Decl. 11/6/00 Ex. 11).

This argument is unpersuasive. Fischer testified at the deposition that 5741 Realty, which entered into the contract, was a nominee entity set up by Fischer's attorney, Mr. Listman, who signed the contract. (*See* Berger Supp. Decl. 12/29/00 Ex. 2). Fischer has stated in his declaration, as quoted above, that he personally funded the down payment. There is no evidence that 5741 Realty entered into the contract on its own behalf or as nominee for any other entity. For these reasons, this Court concludes that any claim against Fischer for diversion of corporate opportunity in connection with his acquisition of the Hotel Property accrued on July 16, 1981.

■ Certain statements in the Council's briefs suggest that the Council alternatively takes the position that its claim against Fischer with respect to the Hotel Property accrued on February 14, 1984, when the sale of the property to Fischer closed, rather than on July 16, 1981, when Fischer entered into a contract to buy the property. Attorneys for the Council stated in oral argument that this accrual date is appropriate because Fischer could have assigned the purchaser's rights under the contract to the Council at any time prior to closing.

This Court finds this argument unpersuasive as well. First of all, the contract does not give the purchaser an unfettered right to assign the contract. (Contract of Sale dated as of 7/16/81 ¶ 16 annexed as Berger Decl. 11/6/00 Ex. 11). Furthermore, as a conceptual matter, Fischer diverted a corporate opportunity, if he did so, when he entered into the contract to buy the Hotel Property, not when the closing occurred. *See generally Burg v. Horn*, 380 F.2d 897, 899–900 (2d Cir.1967) (a director diverts a corporate opportunity if he "take[s] advantage of an offer made to the corporation or of knowledge which came to him as a director"). In the absence of evidence that Fischer had agreed to or was otherwise obligated to assign the purchaser's rights under the contract to

the Council, no wrongdoing occurred when Fischer closed under the contract.

The Council advances a third alternative accrual date for its claim, arguing that its claim against Fischer accrued when Fischer repudiated any obligation to convey the Hotel Property to the Council, which the Council alleges did not occur until 1987. In support of this argument, the Council cites a line of cases in which courts have held that a claim for breach of an agreement to hold property in trust for another arises when that trust is repudiated. *E.g., In re Application of the Community Serv. Soc'y of New York,* 275 A.D.2d 171, 713 N.Y.S.2d 712 (1st Dep't 2000) (in an action against the Distribution Committee of the New York Community Trust by a beneficiary of the trust, holding that the statute of limitations for a beneficiary to demand an accounting against a trust commences upon the occurrence of an action of repudiation); *Barabash v. Barabas (In re Barabash's Estate),* 31 N.Y.2d 76, 80, 334 N.Y.S.2d 890, 893, 286 N.E.2d 268 (1972) (in an action by a beneficiary of a decedent's estate against the administrator of that estate, holding that the limitations period begins to run upon the fiduciary's repudiation of his obligation to administer the estate); *Maric Piping, Inc. v. Maric,* 271 A.D.2d 507, 508, 705 N.Y.S.2d 684, 685 (2d Dep't 2000) (in an action seeking to impose a constructive trust on property purchased by plaintiff's brother, allegedly on behalf of both brothers, holding that the statute of limitations began to run when the brother allegedly breached his fiduciary duty to convey an interest in the property to the plaintiff); *Augustine v. Szwed,* 77 A.D.2d 298, 301, 432 N.Y.S.2d 962 (4th Dep't 1980) (holding that a cause of action for imposition of a constructive trust accrues when the property in dispute is held adversely to the beneficiary's rights; "[a] constructive trustee may acquire property wrongfully, thus holding it adversely to the beneficiary's interest from the date of acquisition, or he may wrongfully withhold property which he has rightfully acquired from the lawful beneficiary.

In either case, the cause of action accrues when the acts occur upon which the claim of constructive trust is predicated, the wrongful withholding").

The problem with this argument is that no admissible evidence has been offered that Fischer acquired the Hotel Property in trust for the Council, or pursuant to any agreement that he would hold the Hotel Property for the Council's benefit. Nor has admissible evidence been offered of facts which would support the imposition of a constructive trust, for which Claimants would be required to show "the existence of a confidential or fiduciary relationship, a promise, a transfer in reliance thereon, and unjust enrichment." *Size v. Size,* 276 A.D.2d 329, 714 N.Y.S.2d 266 (1st Dep't 2000), citing, *Sharp v. Kosmalski,* 40 N.Y.2d 119, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976). While evidence has been submitted that would arguably create a triable issue of fact whether a confidential or fiduciary relationship existed between Fischer and the Council, no admissible evidence has been submitted that would raise a factual issue with respect to the other elements of such a claim. As Judge Gold noted, "it does not logically follow that, because Fischer was authorized to conduct real estate transactions on plaintiffs' behalf, *all* Fischer's real estate transactions *must necessarily* have been conduct on their behalf. In other words, although plaintiffs have presented evidence that Fischer was authorized to act as their representative, they have failed to offer any proof indicating that he was in fact acting on their behalf and not for his own account when he acquired the real properties at issue in this case." *Fischer,* 63 F.Supp.2d at 251; Report at 33. In the absence of evidence of any agreement or other obligation to acquire or hold the Hotel Property for the Council's benefit, there is no basis for dating the accrual of the Council's claim when Fischer refused the Council's demand that he turn the Hotel Property over to the Council.

In their fourth supplemental submission, dated January 16, 2001, the Council advanced the argument that the Council has also pled a claim for fraud in this action, based upon the assertion that Fischer, who the Council claims was a fiduciary, fraudulently failed to disclose to the Council that he was acquiring the Hotel Property for himself. Therefore, the Council argues, pursuant to C.P.L.R. 213(8), the statute of limitations is six years and did not begin to run until February 1987, when the Council discovered the alleged fraud. (Letter from Berger to the Court of 1/16/01).

This argument suffers from the same defect as the argument last discussed. While the Council may assert a claim of fraud, it has not come forward with evidence to support such a claim. In particular, the Council has failed to provide evidence that Fischer was acting as a fiduciary for the Council in connection with the Hotel Property, or otherwise owed a fiduciary duty to the Council to disclose that transaction to them. *Cf. Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir.1992) (holding that a certain shop steward's intentional omission of information which he had a fiduciary duty to report constituted actionable fraud).

■ The Council also advances several arguments why the statute of limitations, even if it began to run on July 16, 1981, should be tolled. First, they argue that Fischer made a demand for arbitration prior to the expiration of the limitations period (which the Council asserts would be, at the earliest, July 16, 1987, six years after the contract to acquire the Hotel Property was entered into). In support of this argument, the Council cites Fischer's deposition testimony given in December 2000, in which he stated that he summoned the Council to a Rabbinical Court in February or March 1987. (Fischer Dep. 12/19/00 at 81–82 annexed as Berger Supp. Decl. 12/29/00 Ex. 2). According to the Council, this tolled the statute of limitations pursuant to C.P.L.R. 204(b).

■ The language of C.P.L.R. 204(b) makes it clear that it has no application to this case. It provides as follows:

> Where it shall have been determined that a party is not obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination that there is no obligation to arbitrate is not a part of the time within which an action upon such claim must be commenced. The time within which the action must be commenced shall not be extended by this provision beyond one year after such final determination.

Thus, in order to toll the statute of limitations under C.P.L.R. 204(b), there must have been a determination that a party is not obligated to submit a claim to arbitration. Where such a determination has been made, the time which elapsed between the demand for arbitration and the final determination that there is no obligation to arbitrate is excluded from the limitations period. The purpose of the provision is to insure that a plaintiff who has commenced an arbitration proceeding within the limitations period is not subsequently met with a statute of limitations defense if it is later determined that the claim is not arbitrable. *Joseph Francese, Inc. v. Enlarged City School District of Troy*, 95 N.Y.2d 59, 62, 710 N.Y.S.2d 315, 316, 731 N.E.2d 1123 (2000).

Here, it is questionable whether Fischer's request that the Council attend a Rabbinical Court is a demand for arbitration within the meaning of C.P.L.R. 204(b). Even if it can be so construed, however, the record is devoid of any evidence that there has been a final determination that there is no obligation to arbitrate. Absent such a determination, the predicate for invoking C.P.L.R. 204(b) has not been met, and C.P.L.R. 204(b) by its terms has no application.

■ The Council also argues that Fischer is equitably estopped from interposing the statute of limitations as a defense be-

cause of conduct he engaged in during the period from 1987 through 1992. The Council asserts that "Fischer feigned intent to arbitrate-between 1987 through 1992–before a [Rabbinical Court] to cause the Council to delay suit." (Council Supp. Mem. 12/29/00 at 24).

■ It is axiomatic that a claim of equitable estoppel cannot be based upon events which occurred after the expiration of the limitations period, because estoppel cannot revive a claim that expired. *E.g.*, *Powers Mercantile*, 67 N.Y.2d at 982, 502 N.Y.S.2d at 1001, 494 N.E.2d 106. Because any claim against Fischer accrued on July 16, 1981, when the agreement to acquire the Hotel Property was entered into, the statute of limitations expired on July 16, 1987, six years later (accepting for the purposes of this analysis the Council's argument that the six year limitations period under C.P.L.R. 213(7), rather than the three-year statute of limitations under C.P.L.R. 214, applies). It is necessary, therefore, to focus on evidence of events prior to July 16, 1987 in order to determine whether a triable issue of fact exists with respect to the Council's equitable estoppel claim.

The only evidence identified by the Council of events occurring prior to July 17, 1987 which might conceivably support the Council's equitable estoppel claim is David Fischer's testimony, discussed above, that he summoned the Council to a Rabbinical Court in February or March 1987, and the Affirmation of Joseph Spielman, dated December 28, 2000. (Berger Supp. Decl. 12/29/00 Ex. 1). Rabbi Spielman identifies himself as a former chairman of the Council, who took office in 1986. Spielman does not state that Fischer summoned the Council to a Rabbinic Court, but rather that the Council summoned Fischer to a Rabbinic Court, "sometime in early 1987." (Spielman Decl. 12/28/00 ¶ 6). According to Spielman, "[n]egotiations through the Beth Din followed, during which time Fischer and the Council communicated through letters to and from the Beth Din. Fischer first par-

tially complied (inadequately) to the Beth Din's order that he provide books and records in or about February 1987. . . . Because the information provided by Fischer was inadequate, and he refused the Beth Din's order that he provide further documentation, the Beth Din held Fischer in contempt of the Beth Din on or about March 15, 1987, which meant essentially that he was excommunicated officially from the Crown Heights Jewish Community." (*Id.* ¶¶ 7, 10). At that point, according to Spielman, Fischer and his family "fled the country, to Israel," where they continue to reside. (*Id.* ¶ 11). Spielman further states that he continued to engage in settlement discussions with unnamed "emissaries" of Fischer between March 1987 and the commencement of the District Court Action in 1992. (*Id.* ¶ 12).

■ A close examination of this proffered evidence shows that the only events alleged to have occurred prior to July 16, 1987 are (i) Fischer's request, in February or March 1987, that the Council attend a Beth Din, (ii) Fischer's production of books and records for the Beth Din convened by the Council, in February 1987, and his subsequent refusal to produce further documents, and (iii) Fischer's engaging in "settlement negotiations" with Spielman through Fischer's "emissaries." Even assuming that the Council could circumvent the hearsay problem inherent in Spielman's testimony concerning his negotiations with unnamed "emissaries" of Fischer, this evidence is insufficient to raise a triable issue of fact with respect to equitable estoppel.

As the Second Circuit has recently noted,

"[U]nder New York law, equitable estoppel requires a showing of

(1) An act constituting a concealment of facts or a misrepresentation;

(2) An intention or expectation that such acts will be relied upon;

(3) Actual or constructive knowledge of the true facts by the wrongdoers;

(4) Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment."

*General Elec. Capital Corp. v. Armadora, S.A.,* 37 F.3d 41, 45 (2d Cir.1994) (citations omitted).

Notably absent from the record is any evidence of reliance by the Council on any action by Fischer. Rabbi Spielman does not state that the Council refrained from taking any action based upon the Beth Din summons, or based upon any other action or statement by Fischer during the period prior to July 16, 1987. Indeed, the Council proceeded to excommunicate Fischer—a fact which would tend to controvert reliance. Nor does Spielman or any other witness state that the Council refrained from taking legal action based upon negotiations with Fischer's "emissaries." Absent some evidence of reliance, the Council's claim of equitable estoppel raises no factual issue.

CMH also submits documentation which it claims supports the Council's equitable estoppel claim. (*See* Joseph Decl. 12/28/00 and attachments thereto). These documents do not create a triable issue of fact with respect to equitable estoppel, because the only documents which are conceivably relevant to that claim are dated after the expiration of the statute of limitations, on July 16, 1987. Moreover, the documents proffered are, without exception, hearsay. This is so even to the extent that the documents in question consist of correspondence that purports to repeat statements made by Fischer, because the descriptions of Fischer's alleged statements are not made under penalty of perjury, and therefore cannot be treated as affidavits or testimony for the purposes of Fed. R. Bankr.P. 7056(e).

The Council notes that the Honorable Joanna Seybert, in denying summary judgment on statute of limitations grounds in the District Court Action, held that "[t]he Court regards the reasonableness of the plaintiffs' reliance upon Fischer's representations, and the extent of the plaintiffs' actual reliance thereon, to be issues within the province of the trier of fact." *Crown Heights Jewish Community Council, Inc. v. Fischer,* No. 92–CV–3123(JS), slip op. at 7 (E.D.N.Y. July 3, 1995) (annexed as Fischer Supp. Mem. 12/14/00 Ex. B). The Council argues that Judge Seybert's ruling in this regard should be followed by this Court. However, Judge Seybert was ruling on a statute of limitations defense asserted in a RICO action, in which separate cause of action accrues each time a plaintiff discovers or should have discovered an injury caused by a RICO violation, regardless of when the actual violation occurred. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1105 (2d Cir.1988). Thus, in the District Court Action, Judge Seybert concluded that a RICO cause of action arose upon the maturity of each separate and independent tenant obligation to pay rent at a disputed building, and that as a result, plaintiffs in the District Court Action had viable RICO claims for injuries resulting from ongoing collections of rent that they discovered or should have discovered within the prior four years. *Fischer,* slip. op. at 6. Accordingly, in evaluating the equitable estoppel claim asserted in the District Court Action, Judge Seybert was required to consider evidence presented by the Council of actions which took place after July 16, 1987, and of the Council's reliance thereon, because the RICO claims had not expired at that time. (*E.g.,* Spielman Decl. 8/8/94 ¶ 4 annexed as Fischer Supp. Mem. 12/14/00 Ex. A) (in which Spielman states that during the period from "late 1987 through early 1992," Fischer "continued to send prestigious emissaries from Jerusalem ... telling us that we need not go to court because the matter could be settled by a Beth Din."). For this reason, Claimant's reliance on Judge Seybert's ruling is misplaced.

The Council makes a final argument that the statute of limitations should be tolled under C.P.L.R. 207, because Fischer "fled" to Israel upon being excom-

municated in March 1987 and has been continuously absent from New York state since then, apart from periodic visits. This argument has no merit. C.P.L.R. 207 by its terms has no application "where jurisdiction over the person of the defendant can be obtained without personal delivery of the summons to the defendant within the state." C.P.L.R. 207(3). Here, the claims asserted against Fischer are plainly within the scope of New York's long-arm statute, C.P.L.R. 302(a), as they relate to (among other things) tortious acts allegedly performed by Fischer in New York as well as to Fischer's ownership of real property in New York.* Accordingly, either under C.P.L.R. 313, or Fed.R.Civ.P. 4(f), jurisdiction over Fischer could be obtained by service upon him outside the state, for example by an attorney in Israel.

No legal action asserting the Council's Claims was commenced prior to the filing of the District Court Action, in 1992, almost eleven years after the Council's cause of action accrued. Accordingly, whether the applicable limitations period is three years, as prescribed by C.P.L.R. 214, or six years, pursuant to C.P.L.R. 213(7), the Council's Claims are time-barred.

CMH's claims, to the extent they are based upon a theory of conversion or misappropriation of corporate opportunity, are also well outside the scope of any potentially applicable limitations period, because those claims accrued in 1975 and 1977, the respective dates upon which the properties located at 466 Albany Avenue and 1577–85 Carroll Street were acquired by Fischer. *See* CMH Proof of Claim No. 19 (Fischer Sum. J. Mot. Ex. 4). There is no evidence in the record that any litigation asserting CMH's claims were filed prior to the commencement of the District Court Action. Accordingly, CMH's claims of this type (to the extent it may assert any) are time-barred.

In a letter to the Court submitted after argument, counsel for CMH asserted that CMH's claims are not time-barred, because "CMH does not rely on any theory of misappropriation of a corporate opportunity, but instead, *inter alia,* on a fraudulent breach of fiduciary duty." (Letter from Joseph to the Court of 1/12/01). The difficulty with this argument is that CMH, like the Council, has not submitted evidence supporting such a claim. CMH's claim will be analyzed on the merits.

### Analysis of Summary Judgment on the Merits

Although this Court has concluded that the Claims should be dismissed on statute of limitations grounds, this opinion will examine the debtor's summary judgment motion on the merits.

#### Council's Claim

In her opinion denying summary judgment on collateral estoppel and res judicata grounds, Judge Swain held that "[t]he Council and CMH should ... reflect on the District Court's analysis of their prior factual proffers and must offer relevant

---

\* CPLR 302(a) provides as follows:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

evidence of a different quality, in appropriate form, if they mean to survive summary disposition on the merits of their claims in this proceeding." *Fischer,* 252 B.R. at 612. In response to this direction, the Council has submitted several new items of evidence. The debtor argues that the new evidence proffered by the Council is either inadmissible, or insufficiently probative to raise a triable factual issue. Fed.R.Civ.P. 56(e), made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7056, requires that affidavits submitted on a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Each of the Council's new evidentiary offerings will be examined in light of this standard. To the extent that this Court finds that the evidence proffered is admissible, its sufficiency to defeat Fischer's summary judgment motion will be examined.

*The New York Times Article*

■ The Council urges this Court to consider on this motion an article published in the New York Times in 1985. Mervyn Rothstein, *New Hotel Is a Symbol of Change in Brooklyn,* N.Y. Times, January 28, 1985, at B2. (Berger Decl. 11/6/00 Ex. 13). In the article, the reporter quotes Fischer, and attributes certain other statements to Fischer without directly quoting him. The Council argues that the quoted statements, and the statements attributed to Fischer, should be admissible as admissions of Fischer, pursuant to Fed.R.Evid. 801(d)(2).

Of course, even if testimony by the reporter as to Fischer's statements to him would be admissible, the newspaper article is nevertheless inadmissible hearsay, unless it falls within an exception to the evidentiary rule excluding hearsay. *See* Fed.R.Evid. 805.

The Council argues that the article is admissible as recorded recollection of the reporter, pursuant to Fed.R.Evid. 803(5).

To satisfy the prerequisites to admission of a hearsay statement as recorded recollection, the Council proffers trial testimony given by the reporter, Mervyn Rothstein, in 1991, in a state court action, *Crown Realty Co. v. Crown Heights Jewish Community Council,* No. 7286/88 (N.Y. Sup.Ct. April 23, 1993). The debtor argues that the trial testimony is also inadmissible hearsay, because no showing has been made that Rothstein is unavailable to testify in this action. Absent such a showing, Fischer argues, Rothstein's prior trial testimony would not be admissible under Fed. R.Evid. 804(b)(1), and therefore should not be considered on this motion. In response, the Council cites cases holding that "[s]worn testimony from another trial is admissible on a motion for summary judgment," whether or not such testimony would be admissible at trial under Fed. R.Evid. 804(b)(1). *Kraft Gen. Foods, Inc. v. Cattell,* 18 F.Supp.2d 280, 284 (S.D.N.Y. 1998) (citations omitted) ("[t]ranscript testimony serves the same purpose as an affidavit under Fed.R.Civ.P. 56 ... and is comparable in that each form of testimony is sworn and submitted without cross-examination by the adverse party").

Even if Mervyn Rothstein's 1991 trial testimony is considered on this motion for summary judgment, as the Council urges, the foundational requirements under Fed. R.Evid. 803(5) for admissibility of the newspaper article he wrote have not been met. Fed.R.Evid. 803(5) provides as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'

memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

The portion of Mr. Rothstein's trial testimony which is proffered to establish the admissibility of the article as recorded recollection is annexed as Exhibit 2 to the Reply Declaration of David A. Berger, dated December 5, 2000. In this regard, Mr. Rothstein testified as follows:

> Q. Mr. Rothstein, in connection with that article there are several quotes and I understand you have no independent recollection. You generally take notes when you interview someone?
>
> A. Yes, I do.
>
> Q. And from those notes, that you later prepare the article?
>
> A. Yes, that's right.
>
> Q. And generally speaking, would you say that your quotes are accurate?
>
> A. Yes, sir.
>
> Q. You don't make up any quotes?
>
> A. That's correct, sir.
>
> Q. You also don't make up any statements that are attributed to a person who you speak to?
>
> A. That's correct.

(*Crown Realty Co.* Trial Tr. at 1258–1259 annexed as Berger Reply Decl. 12/5/00 Ex. 2). Beyond this, Mr. Rothstein offered no further substantive testimony, except to confirm repeatedly (Tr. at 1260–63) that he had no independent recollection of the subject matter of the article, and to state (Tr. at 1268) that he remembered that Fischer "was someone that I spoke to in connection with the article."

■ This testimony does not satisfy the foundational requirements of Fed. R.Evid. 803(5). To qualify as recorded recollection, a document must constitute a "memorandum or record," and must be "shown to have been made or adopted by the witness when they matter was fresh in the witness' memory." Even if the newspaper article is deemed to qualify as a "memorandum or record," there is no evidence that it was "made or adopted" by Mr. Rothstein "when the matter was fresh in [his] memory." Indeed, there is no indication whatsoever in the record of when Mr. Rothstein interviewed Fischer, or of how long after the interview (or interviews) he wrote the article. In the trial testimony proffered, Mr. Rothstein did not even make any general statement to the effect that he wrote the article when the interview was fresh in his memory. For this reason, whether or not Mr. Rothstein's interview notes might be admissible as recorded recollection (a question which this Court is not deciding at this time), the newspaper article does not so qualify.

### The Falleder, Mockin and Schapiro Affidavits

The Council has submitted three new affidavits in connection with this motion, made by Arnold Falleder, sworn to November 1, 2000 ("Falleder Aff. 11/1/00"); Leib Mockin, dated November 4, 2000 ("Mockin Aff. 11/4/00"); and by Levy Schapiro, dated October 19, 2000 ("Schapiro Aff. 10/19/00"). Each of these affidavits is proffered by the Council in support of its claim that Fischer misappropriated a corporate opportunity of the Council when he acquired the Hotel Property, and each will be examined in turn to determine whether it raises a triable issue of fact with respect to any of the claims.

### The Falleder Affidavit (Annexed as Berger Decl. 11/6/00 Ex. 2)

■ Falleder identifies himself as a principal of The Falleder Group, an organization that was retained by the Council in or about February 1983 "to conduct a study of the feasibility of [the Council] developing a hotel in Crown Heights, New York, that would principally serve the Lubavicher Jewish community." (Fallender Aff. 11/1/00 ¶ 3). According to the Council, Falleder's affidavit, and the study which is attached to it, show that the Council had a

tangible expectancy in the development of the Hotel Property, which is an element of the Council's claim for misappropriation of a corporate opportunity.

The property which is the subject of Falleder's feasibility study is not the Hotel Property, which at the time it was acquired by Fischer was an unused hospital facility. (Fischer Decl. 11/16/00 ¶ 12). Instead, Falleder's feasibility study related to the development as a hotel of a private apartment building located at 1365 Carroll Street, several blocks away. *Id.* According to the Council, the fact that the feasibility study related to a different property is irrelevant, because the study shows that the Council had a tangible expectancy in the development of a hotel in Crown Heights.

The requirement of demonstrating a tangible expectancy in connection with a claim of diversion of corporate opportunity has been explained by the Second Circuit as follows:

Under New York law, property acquired by a corporate director will be impressed with a constructive trust as a corporation had opportunity only if the corporation had an interest or a "tangible expectancy" in the property when it was acquired.... Although some commentators have criticized the "interest of expectancy" test as vague and unhelpful ... it clearly expresses the judgment that the corporate opportunity doctrine should not be used to bar corporate directors from purchasing any property which might be useful to the corporation, but only to prevent their acquisition of property which the corporation needs or is seeking, or which they are otherwise under a duty to the corporation to acquire for it....

Thus a director may not purchase for himself property under lease to his corporation .... Nor may he purchase property which the corporation needs or has resolved to acquire... or which it is contemplating acquiring. He may not take advantage of an offer made to the corporation ... or of knowledge which came to him as a director.

*Burg,* 380 F.2d at 899–900 (citations omitted).

Falleder's feasibility study does not create a triable factual issue with respect to the Council's diversion of corporate opportunity claim because it was commissioned in February 1983, approximately eighteen months after the contract to acquire the Hotel Property was entered into, and because it does not relate to the Hotel Property. Any diversion of corporate opportunity by Fischer occurred in July 1981, when he entered into a contract to purchase the Hotel Property through a nominee. Accordingly, the relevant inquiry is whether the Council had a tangible expectancy in the development of the Hotel Property in July, 1981. A feasibility study commissioned approximately eighteen months later, and relating to the redevelopment of a different property—an apartment building, rather than a hospital—is not significantly probative on this point. *Anderson,* 477 U.S. at 249–250, 106 S.Ct. 2505 ("[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted").

The sufficiency of the Falleder Affidavit to create a triable factual issue concerning the Council's tangible expectancy in the Hotel Property must also be evaluated in light of the fact that the debtor has submitted evidence which controverts the Council's assertion that it had a tangible expectancy in acquiring the Hotel Property. Yisrael Rosenfeld, the Executive Director of the Council during the relevant period, states in an affidavit that "the Council did not intend to consider any ownership interest of its own in the Crown Palace Hotel project. We merely promoted the Hotel project undertaken by Fischer because it benefitted the community." (Rosenfeld Aff. 3/6/97 ¶ 5, annexed as Feit Aff. 4/12/98 Ex. A, annexed as Fischer Summ. J. Mot. 9/21/00 Ex. 39). To the extent that the Falleder Affidavit purports

to contradict this, it is hearsay, except to the extent that the statements reported by Falleder are admissions of Fischer. Fed. R.Evid. 801(d)(2).

A close examination of the Falleder Affidavit shows that the only statement specifically attributed to Fischer by Falleder is that he "held himself out to be" the Council's "housing man," the individual "in charge of housing" at the Council. This testimony, even if true, does not establish that Fischer had any fiduciary or other obligation to the Council with respect to the Hotel Property in 1983, much less in July 1981, when the contract to acquire that property was entered into. As Judge Gold held, "... it does not logically follow that, because Fischer was authorized to conduct real estate transactions on plaintiffs' behalf, *all* Fischer's real estate transactions *must necessarily* have been conduct on their behalf." *Fischer,* 63 F.Supp.2d at 250; Report at 33 (emphasis in original).

Aside from this statement, the only other statement which is even generally ascribed to Fischer is that Falleder was advised by his "principal contacts" at the Council, who he says were Fischer, Rosenfeld, and Mendel Shemtov, that the Council "had sought financing from a bank to develop a hotel in Crown Heights and that the bank had advised that a feasibility study should be conducted for this project before it would consider making such financing available to [the Council]. I was also advised by them that funding for the feasibility study had been procured by [the Council] from the U.S. Economic Development Administration." Falleder Aff. 11/1/00 ¶ 3. To the extent that Falleder is reporting statements by Rosenfeld or Shemtov, his testimony is inadmissible hearsay. To the extent that he is reporting statements by Fischer (which is not clear), his testimony is not significantly probative on the question of whether the Council had a tangible expectancy in acquiring a different property eighteen months earlier.

*The Mockin Affidavit* (Annexed as Berger Decl. 11/6/00 Ex. 9)

Mockin identifies himself as a "businessman" who "reside[s] in Crown Heights," and who was a "community volunteer in housing matters from the early 1970's through approximately 1985." (Mockin Aff. 11/4/00 ¶ 1). Mockin states that "[d]uring that period Fischer was employed by the community (i.e. CHJCC and CMH) and received a salary." *Id.* Mockin further states that "Fischer's job was to acquire properties as agent for the community. When it suited the community's purposes, Fischer acquired properties through CMH, [the Council] or other nominee corporations Fischer set up to hold title for the benefit of the community. Fischer never disclosed to me, and always denied, any personal interest or profit in properties." (*Id.* ¶ 2).

■ This testimony does not create a triable factual issue, either on the issue of whether the Council had a tangible expectancy in the Hotel Property, or on the issue of whether Fischer owed a fiduciary or other obligation to the Council with respect to the acquisition of the Hotel Property, for the reason noted by Judge Gold. *Fischer,* 63 F.Supp.2d at 250; Report at 33. The fact that Fischer may have been an agent for the Council or CMH in connection with real estate acquisitions does not mean that Fischer had any fiduciary or other duty to refrain from acquiring real estate for his own account. It is noteworthy, too, that Mockin's affidavit appears to be deliberately vague in a number of respects, as when he states that Fischer failed to disclose, and always denied, any personal profit or interest in "properties." Vague, conclusory statements are insufficient to defeat a summary judgment motion. *Kerzer,* 156 F.3d at 400.

Mockin goes on to state that "[o]ne project Fischer worked on for the community was Block 1417 (the 'Hotel Property')." (Mockin Aff. 11/4/00 ¶ 3). Again, the affi-

davit lapses into what appears to be deliberate vagueness. Although in the prior paragraph Mockin states that Fischer was employed by "the community (i.e. CHJCC and CMH)," throughout the remainder of the affidavit, the word "community" is used, lower case, and without definition. It appears that this affidavit was drafted with intentional ambiguity in this regard, to create the potentially misleading impression that Mockin meant Claimants wherever the affidavit used the word "community."

This is insufficient to defeat Fischer's motion for summary judgment. As Judge Gold found, "[W]hat it means to acquire property 'on behalf of the community' is, at least in the context of this case, a matter of substantial ambiguity.... In this context, an acquisition 'on behalf of the community' could well mean one in which the buyer intends to use the property in a manner that is consistent with the desires and values of the Jewish residents in Crown Heights. In this sense, Fischer's acquisition of the hotel property can be understood as a purchase 'on behalf of the community'." *Fischer*, 63 F.Supp.2d at 252; Report at 37.

Finally, Claimants proffer the Mockin Affidavit to establish that he helped Fischer obtain a loan to finance the down payment on the Hotel Property from an individual named Lauffer, and that "[w]e made the loan available to Fischer for the express purpose of CHJCC's acquisition of the property." (Mockin Aff. 11/4/00 ¶ 4). This testimony is contradicted by Fischer, who provides documentary evidence that the loan by Lauffer was secured by another property owned by Fischer, and was made after the contract for the purchase of the Hotel Property was entered into.

More fundamentally, however, it does not appear that Mockin is qualified to testify about the purpose for which this loan, to which he was not a party, was made. Any testimony concerning his understanding of the lender's purpose in making the loan is hearsay. To the extent that he

may be testifying that he, as a "community volunteer," helped Fischer to get a loan from Lauffer because he understood that it would be used to fund the Council's acquisition of the Hotel Property, his testimony does not tend to establish either that Fischer owed a fiduciary duty or other obligation to the Council with respect to the Hotel Property, or that the Council had a tangible expectancy in acquiring the Hotel Property.

In his Report, Judge Gold noted that in its submissions on summary judgment in the District Court Action, the Council had, in a number of instances, selectively quoted or misquoted deposition testimony so as to create a misleading impression. *Fischer*, 63 F.Supp.2d at 243–245; Report at 19–21. Unfortunately, the Council has continued this practice in its submissions on the instant motion. In its initial memorandum in opposition to Fischer's summary judgment motion, the Council quotes Lieb Mockin as saying in his affidavit that "a CMH director and I arranged for a loan of approximately $100,000 for the contract deposition on the property in 1981.... We obtained the loan ... and guaranteed repayment for the purpose of the CHJCC's acquisition of the property." Council's Mem. 11/6/00 at 11. A review of the Mockin Affidavit, however, reveals no mention whatsoever of any guarantee. This misquotation of Mockin's statement is a significant change, for if Mockin was, as the Council's misquotation suggests, a party to the loan transaction as a guarantor, he might be in a position to testify about the loan's purpose. However, because Mockin's actual statement does not support the Council's assertion, it is insufficient to raise a triable issue of fact.

*The Schapiro Affidavit* (Annexed as Berger Decl. 11/6/00 Ex. 12)

Levy Schapiro states that "[d]uring the 1970's and 1980's I assisted David Fischer in his capacity as an employee of CMH and [the Council]," and that at the time they were "close friends" and "worked side-by-side" to "stabilize the real estate

situation in the neighborhood." (Schapiro Aff. 10/19/00 ¶ 2). He goes on to say that "both Rabbi Yehuda Krinsky and David Fischer told me that Fischer was acquiring the hotel property from Methodist Hospital as agent for the community." (*Id.* at ¶ 3).

To the extent that Schapiro is testifying about a statement made by Rabbi Krinsky, his testimony is inadmissible hearsay. To the extent that he is testifying that Fischer told him that he was acquiring the Hotel Property for the community, it is not probative of the Council's claims because of the inherent ambiguity, in this context, of the word "community." As Judge Gold noted, in some senses, it is accurate to say that Fischer in fact did acquire the Hotel Property for the community. *Fischer*, 63 F.Supp.2d at 252; Report at 37.

Schapiro goes on to say that Fischer "later told me that CHJCC received $35,000 per sale as a commission with respect to each of approximately 30 houses that were built and sold on the property, totaling over $1 million for the CHJCC." (*Id.* at ¶ 4). The purported significance of this statement is to show that Fischer admitted, at least implicitly, that the Council had rights in the Hotel Property.

■■■ This statement is insufficient to raise a triable issue of fact because it is directly contradicted by deposition testimony which Schapiro gave, in which he stated that *Fischer*, not the Council, received a commission of $35,000 apiece from the sale of houses built on the Hotel Property. (Fischer Supp. Mem. 12/14/00 Ex. C. at 102). It is well established that "a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack*, 814 F.2d at 124. Otherwise, "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony," thus "diminishing the utility of summary judgment as a procedure for screening out

sham issues of fact." *Perma Research*, 410 F.2d at 578.

Finally, Schapiro states that "[r]egarding other properties acquired by Fischer during the 1970s and 1980s, Fischer always told me that all of the properties were being acquired by him as agent for the community (i.e., either CMH or CHJCC), with no personal benefit for him." (Schapiro Aff. 10/19/00 ¶ 5). In light of Schapiro's testimony (Fischer Supp. Mem. 12/14/00 Ex. C at 209–214), which is inconsistent with this statement, and in light of the inherent ambiguity in the use of the word "community" in the context of this case, this statement is insufficient to create a triable issue of fact.

*Other Evidence Submitted by the Council*

The Council urges that, notwithstanding the careful review by Judge Gold and Judge Gershon of the sufficiency of the evidence presented in the District Court Action, and notwithstanding Judge Swain's holding that Claimants "must offer relevant evidence of a different quality, in appropriate form, if they mean to survive summary disposition of their claims on the merits in this proceeding," this Court should review all the evidence presented, including the evidence evaluated by the Court in connection with Fischer's summary judgment motion in the District Court Action, and make an independent determination of the sufficiency of that evidence to defeat Fischer's summary judgment motion in this case. This Court has conducted such a review, and finds that none of the other items proffered by the Council raise a triable issue of fact with respect to the claim that Fischer diverted a corporate opportunity of the Council in acquiring the Hotel Property, or acquired the Hotel Property for the Council, or owed any fiduciary or other obligation to the Council in connection with the Hotel Property.

Also absent from the record in this case is evidence supporting the Council's claims that Fischer misappropriated the Residen-

tial Properties. To the extent that these claims relate to the properties located at 1577–85 Carroll Street and 466 Albany Avenue, they are also time-barred, for the reasons noted above in connection with the claims asserted by CMH to the same property. According to the Council, in 1977 Fischer caused 1577–85 Carroll Street to be conveyed to CMH, whose "activities" were later merged into the Council, and then on the same day conveyed the property to a corporation controlled by him. The Council also contends that Fischer caused 466 Albany Avenue to be placed in CMH's name in 1979. Even if these contentions are true, they do not, in themselves, create a triable issue of fact with respect to the claim that Fischer misappropriated those properties from the Council or CMH.

With respect to the Council's claims to the properties located at 527–547 Empire Boulevard and 824–36 Montgomery Street, the evidence presented is equally insufficient. The only evidence cited by the Council in support of these claims is (i) Lieb Mockin's statement that at some unspecified time between the early 1970s and 1985 he acquired an option to buy 547 Empire Boulevard by paying monthly rent to keep the property vacant, which option he turned over to Fischer "who said that [the Council] would make the rent payments and acquire the property" (Mockin Aff. 11/4/00 at ¶ 6); and (ii) deposition testimony by Mendel Shemtov, given in the District Court Action, that the Council paid at least some of the rent on that property, which was required by the landlord as a condition to Fischer acquiring the Property (Fischer Summ. J. Mot. Ex. 15 at 45).

Neither of these proffered items of evidence supports the Council's claims to these properties. Even if Fischer told Mockin (a self-described "community volunteer," not an officer, director or employee of the Council or CMH) that the Council would acquire 547 Empire Boulevard, this does not tend to establish either that

Fischer owed the Council a fiduciary duty with respect to the Property, or that the Council had a tangible expectancy in acquiring the property, or that the Council in fact acquired an interest in the property. Nor does Shemtov's testimony support such a claim. To the contrary, Shemtov's testimony supports the contention that the Council made the payments on the property so that Fischer could buy it. *See* Fischer Summ. J. Mot. Ex. 15 at 44–45 (in which Shemtov testified that the owner of the building "was planning to make there a club which this would be a disaster for the community because the back it's all residential," and that "[b]ecause we did want to preserve the building and he [Fischer] was willing to buy, and I think we committed to pay the rent even in the beginning to Mr. Muchkin [Mockin]").

### *Fischer's Invocation of the Fifth Amendment*

The Council points to the fact that Fischer invoked the Fifth Amendment in a 1998 deposition in response to questions concerning his ownership of 466 Albany Avenue, 1577–85 Carroll Street, and the Hotel Property, and to the fact that he invoked the Fifth Amendment again in October 2000 when asked whether he owned any interest in the Hotel Property. (Berger Decl. 11/6/00 Ex. 18 at 34–40, Ex. 3 at 205–206). The Council argues that the adverse inference which may be drawn from this refusal to testify requires that Fischer's motion ("Council's Mem. 11/6/00") for summary judgment be denied.

It is well established "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Lollipop, Inc. v. Schwartz (In re Lollipop, Inc.)*, 205 B.R. 682, 689 (Bankr.E.D.N.Y. 1997). However, even if Fischer did invoke the Fifth Amendment in a context

that would permit an adverse inference to be drawn, the Council must still present affirmative evidence in order to defeat the debtor's motion for summary judgment. *See Anderson*, 477 U.S. at 257, 106 S.Ct. 2505, "[W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness … declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." *Fidelity Funding of California, Inc. v. Reinhold*, 79 F.Supp.2d 110, 116 (E.D.N.Y.1997), *citing United States v. Rylander*, 460 U.S. 752, 758, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983); *United States v. Certain Real Property and Premises Known as: 4003–4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 83 (2d Cir.1995). An adverse inference drawn from the invocation of the Fifth Amendment may not be the sole basis for a finding of liability; independent, corroborative evidence of wrong-doing must be shown. *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 899 F.Supp. 974, 982 (E.D.N.Y.1994); *United States v. Nagelberg*, 772 F.Supp. 120, 123 (E.D.N.Y. 1991); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F.Supp. 1411, 1451–52 (E.D.N.Y.1988).

Thus, once the moving party sets forth sufficient evidence to meet its burden of establishing the absence of a genuine issue of material fact, the nonmoving party must come forward with "specific material contradicting his adversary's presentation" in order to withstand summary judgment. *Centennial Life Ins. Co. v. Nappi*, 956 F.Supp. 222, 228 (N.D.N.Y.1997), *citing Securities & Exch. Comm'n v. Benson*, 657 F.Supp. 1122, 1129 (S.D.N.Y.1987); *Lollipop*, 205 B.R. at 689 (holding that summary judgment may be granted if sufficient evidence is provided in addition to party's refusal to testify due to privilege). For all the reasons discussed above, this Court finds that the Council has failed to produce affirmative evidence sufficient to defeat the debtor's motion for summary judgment.

### The Council's Request for Additional Discovery

■ The Council has requested that Fischer's summary judgment motion be denied to afford them the opportunity to take additional discovery, including discovery under federal and state Freedom of Information laws. The Council does not point to any specific item of discovery that it claims is necessary. Nor does the Council provide any indication of when it believes it would be able to complete such discovery, or exactly why it believes discovery would uncover evidence supporting its claims. Indeed, its Freedom of Information requests have been pending for six months, with no substantive response from the agencies in question. Under these circumstances, and given the fact that the Claimants had extensive opportunities to conduct discovery in the District Court Action, as well as in this Court, the Council "had ample time in which to pursue the discovery it now claims is essential." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir.1985).

■ Moreover, it is well settled that a litigant opposing summary judgment on these grounds "may not simply rely on vague assertions that additional discovery will produce needed but unspecified facts. Rather the movant is required to state with some precision the material sought, and exactly how those materials will help in opposing summary judgment." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994), *quoting Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991).

The Council has failed to meet this standard. It has merely enumerated categories of information which it would like to obtain, but has not described the specific information it is seeking, or explained how that information will help its case. *See, SATCOM Int'l Group PLC v. ORBCOMM*

*Int'l Partners, L.P.,* No. 98 Civ. 9095(DLC), 2000 WL 729110, at *1 (S.D.N.Y. June 6, 2000); *Mason Tenders District Council Pension Fund v. Messera,* 958 F.Supp. 869, 894 (S.D.N.Y.1997) (non-movant must identify "specific discoverable information"). Nor has the Council explained why it has been unable to uncover this information to date or why it expects that this situation will change. Under the circumstances, the Council's request that summary judgment be denied under Fed.R.Civ.P. 56(f) must be rejected.

*CMH's Claims*

In its response to Fischer's summary judgment motion, CMH has not identified any specific item of evidence which it contends raises a triable factual issue. Instead, CMH has submitted five bound volumes of documents which it asserts should be considered, without any explanation of how they are relevant to the issues on this motion. Those documents consist of (i) the record on appeal in the action entitled *Crown Realty Co. v. Crown Heights Jewish Community Council, et al.,* 219 A.D.2d 695, 631 N.Y.S.2d 539 (1995); (ii) an affidavit of Peter Joseph, attorney for CMH, which was submitted in the District Court Action; (iii) various correspondence and documents allegedly pertaining to Fischer and CMH generally; (iv) deeds showing transfers of various properties not at issue on this motion to CMH from Chebro, a predecessor organization, as well as a deed showing the transfer to CMH of 1577–85 Carroll Street by Morad Realty Corporation in 1977; (v) various documents allegedly copied from HUD files pertaining to the rehabilitation of 440 Brooklyn Avenue (which is not at issue on this motion) and 1577 Carroll Street; and (v) excerpts of various depositions taken in the District Court Action.

This Court has reviewed the documentation submitted by CMH and has uncovered no evidence in the form required under Fed. R. Bankr.P. 7056 that raises a triable issue of fact with respect to CMH's claim that Fischer misappropriated the properties located at 466 Albany Avenue and 1577–85 Carroll Street, or that those properties were acquired beneficially by Fischer for CMH, or that Fischer breached any fiduciary duty to CMH with respect to those properties. Nor does the evidence submitted by CMH raise a triable issue of fact with respect to the Council's claims. Much of the documentation submitted is irrelevant to the Claims. Other documentation, including the documentation purportedly relating to the renovation of 440 Brooklyn Avenue and 1577 Carroll Street, is inadmissible hearsay on this motion. Still other documentation, such as the deposition transcript excerpts, fails entirely to support any Claim asserted by CMH or the Council.

*Fischer's Standing Argument*

Fischer argues that the Claims asserted by CMH and the Council should be expunged under Fed. R. Bankr.P. 7017(b) because the Claims were not authorized by validly constituted boards of directors of the Council or CMH. Because the Claims are barred by applicable statutes of limitations, and because insufficient evidence has been submitted in support of the Claims to defeat Fischer's motion for summary judgment, this Court does not decide this argument.

*Conclusion*

For all of the foregoing reasons, Fischer's motion for summary judgment expunging the Claims of the Council and CMH is granted, and the Council's cross-motion summary judgment is denied. Fischer is directed to settle an order consistent with this opinion.